1   Lee Arthur Rice II
2   16433 North Midland Boulevard #83
    Nampa, Idaho
3   208-570-2521

U.S. COURTS

OCT 1 0 2013

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

4

5

6

7

8

9          **In the district court of the United States for Idaho**

10

11   Lee Arthur Rice II,                    )    CASE NO. 13-cv-441-CWD
                                            )
12          Plaintiff,                      )
                                            )
13                                          )
                                            )
14          -vs-                            )
                                            )    VERIFIED COMPLAINT
15   CITY OF BOISE CITY; COUNTY OF ADA;     )
     CITY OF MERIDIAN; IDAHO STATE          )         and
16   POLICE; STATE OF IDAHO; JANET          )
     MURAKAMI; and, JOHN DOES 1-20,         )    DEMAND FOR TRIAL BY JURY
17                                          )
            Defendants.                     )
18                                          )
                                            )
19                                          )
                                            )
20

21          COMES NOW, Plaintiff Lee Arthur Rice II, for causes of action in a suit in equity

22   against the above-named Defendants, COMPLAINS AND ALLEGES as follows:

23

24          **PARTIES, JURISDICTION AND VENUE**

25   1.     At all times relevant to the allegations herein, Plaintiff Lee Arthur Rice II (hereinafter,

26   "Rice") was and is domiciled in the state and district of Idaho.

27

28

1
VERIFIED COMPLAINT

2.      At all times relevant to the allegations herein, Plaintiff possessed Rights protected, secured and guaranteed by the National Constitution.

3.      At all times relevant to the allegations herein, the acts or omissions of the Defendants were intentional.

4.      At all times relevant to the allegations herein, the acts or omissions of the Defendants caused constitutional deprivations.

5.      Plaintiff is the real party in interest.

6.      Plaintiff is entitled to the relief requested herein.

7.      At all times relevant to the allegations herein, the City of Boise City was a political subdivision of the State of Idaho.

8.      At all times relevant to the allegations herein, the County of Ada was a political subdivision of the State of Idaho.

9.      At all times relevant to the allegations herein, the City of Meridian was a political subdivision of the State of Idaho.

10.     At all times relevant to the allegations herein, the Idaho State Police was an agency and/or political subdivision of the State of Idaho.

11.     Defendant State of Idaho was, at all times relevant, acting under color of law.

12.     The other named-Defendants were, at all times relevant, acting under color of law and/or color of process.

13.     Defendant Janet Murakami was an officer and agent of the Idaho State Police at all relevant times.

14.     At all times relevant to the allegations herein, JOHN DOES 1-20 were officers, employees, and/or agents of the Defendants listed above.

15.     Each of the said Defendants is being sued in their personal-capacity (individual-capacity) and in their official capacity.

16.     This action arises pursuant to 62 Stat. 930; Pub. L. 85–554, June 25, 1948, ch. 646, codified at 28 U.S.C. § 1331 and pursuant to R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317; R.S. § 1979 derived from act Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13, codified at 42 U.S.C § 1983.

17.     All of the acts complained of occurred in the state and district of Idaho making jurisdiction proper in this Court.

18.     Venue is appropriate pursuant to 62 Stat. 935; Pub. L. 87–748, June 25, 1948, ch. 646, codified at 28 § 1391(a)(1); (b)(1) and (2); and (c)(1) and (2).

## **FACTUAL ALLEGATIONS**

19.     On December 26, 2011, Mr. Rice was traveling with his family, westbound on I-84, in his automobile, his personal private property, hereinafter "car."

20.     Idaho State Trooper Janet Murakami, hereinafter "Trooper Murakami," initiated an unlawful traffic stop upon Mr. Rice.

21.     Trooper Murakami illegally "seized" Mr. Rice's car.

22.     Mr. Rice pulled his car to the side of the road and Trooper Murakami approached the car.

23.     Mr. Rice was in possession of a valid and current driver's license.

24.     When asked to provide his driver's license, through his partially opened window, Mr. Rice fully and honestly identified himself to Trooper Murakami.

25.     In response, Trooper Murakami communicated to dispatch and improperly requested a "Code 3 response."

26.     According to Boise Police Chief Michael Masterson, "A 'Code 3 response' from police needs to be reserved for life and death emergency calls. This review insures that, and reassures

the public that the Boise Police Department is doing all it can to balance emergencies with the safety of motorists and others on the road." http://police.cityofboise.org/home/news-releases/2009/02/02-03-09-code-3-police-response-changes/

27.     The unlawful traffic stop was not a "life and death emergency."

28.     According to Boise Community Ombudsman Pierce Murphy, "Every time a police vehicle rolls 'Code 3' the risk of collision and injury is increased for both officers and the general public." http://police.cityofboise.org/home/news-releases/2008/03/03-11-08-code-3-response-study/

29.     By improperly requesting a "Code 3 response" Trooper Murakami increased the risk of collision and injury, unnecessarily endangering both the officers involved and the general public.

30.     Trooper Murakami's unwarranted and improper action may rise to the level of "reckless endangerment."

31.     In response, and as a direct result of Trooper Murakami's improper request, more than a dozen officers among various agencies were dispatched to the scene.

32.     Trooper Murakami assaulted Mr. Rice by wielding her baton and orally threatening to shatter the window, despite the fact that Mr. Rice and his family members, including children, were in close proximity to the window.

33.     Mr. Rice was forcibly removed from his car, even though Mr. Rice was not resisting.

34.     After Mr. Rice was forcibly removed from his car, he walked to the rear of the car and still was not resisting in any way.

35.     Upon reaching the rear of the car, an officer intentionally stuck his foot out in front of Mr. Rice's right ankle.

36.     The officer, on Mr. Rice's right side, and another officer, on his left side, pulled Mr. Rice forward by his shoulders, tripping Mr. Rice over the officer's foot, and forcibly throwing him to the ground, face first, where he was handcuffed.

37.     Once he was on the ground, officers intentionally and repeatedly struck Mr. Rice in the torso, hips and back.

38.     The officers used excessive and unnecessary force in removing Mr. Rice from his vehicle, throwing him to the ground, and in handcuffing him, directly and intentionally causing personal injuries to Mr. Rice.

39.     Mr. Rice was arrested and charged with resisting or obstructing officers in violation of Idaho Code § 18-705 and for failing to purchase or maintain a valid driver's license in violation of Idaho Code § 49-301(1).

40.     Subsequent to the arrest, Trooper Murakami falsely said to another officer on the scene that the reason she pulled Mr. Rice over was because she "was worried about him" since "he was swerving" and she "thought he may have been drinking."

41.     At no time did Trooper Murakami accuse Mr. Rice of driving while under the influence, hereinafter "DUI."

42.     At no time did Trooper Murakami ask Mr. Rice if he had been drinking.

43.     At no time was Mr. Rice administered a field sobriety test.

44.     Mr. Rice was not charged with DUI.

45.     The dash-cam video recording of the stop, made by Trooper Murakami herself, and plainly contradicting her statement above, regarding Mr. Rice's pattern of driving, clearly shows that Mr. Rice was traveling straight down the highway, not swerving, using his turn signals when changing lanes, and in complete control of his car at all times.

46.     At a hearing in the Idaho State criminal action, after viewing the dash-cam video, District Judge Steckel determined that Mr. Rice's driving fell within the broad range of normal driving behavior and that, referring to Trooper Murakami, "she had no reason to pull him over."

47.     Mr. Rice was taken to the Ada County jail where he was further assaulted by officers for not "sitting down."

48.     Mr. Rice continued to be handcuffed and was in extreme pain from the assault and battery on the highway during the stop.

49.     When he arrived at the Ada County jail, Mr. Rice was in possession of thirty dollars ($30.00) in lawful currency.

50.     This property was taken from him and never returned.

51.     When he was discharged from the jail, he was instead given a "debit card" to which he never consented.

52.     This debit card came with fees and other conditions to which Mr. Rice never authorized.

53.     Upon information and belief, it is the practice of the Ada County jail to confiscate all cash on every prisoner and to provide them with a debit card upon release.

54.     In the Idaho State criminal action, Mr. Rice, acting *in propria persona,* submitted a motion to suppress based on the fact that Officer Murakami lacked probable cause or reasonable suspicion to stop his vehicle on December 26, 2011.

55.     On or about May 8, 2012, Idaho District Judge Steckel granted the Motion to Suppress finding that no probable cause or reasonable suspicion existed to stop the vehicle.

56.     The State then filed a Motion to Reconsider that decision.

57.     The State's Motion to Reconsider was denied.

58.     On or about June 5, 2012, the criminal action was dismissed upon the State's motion.

## COUNT I
### Deprivation of Rights/Municipal Liability
### (42 U.S.C. § 1983)

59.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

60.     The Idaho State Police, the City of Boise City, the City of Meridian, and the County of Ada's edicts and/or acts and/or omissions, in failing to properly train and/or supervise subordinates in the respective agencies, represents official policy and/or custom of those agencies and of the State of Idaho.

61.     These agencies possessed final authority to establish agency policy with respect to training and supervising subordinate employees in the respective offices – an administrative task associated with those offices.

62.     At all times relevant, the respective agencies knew, to a moral certainty, that employees within the agencies would face situations where proper amounts of force in effectuating arrests and would require training and/or supervision to adequately protect the Rights of the public and of Citizens.

63.     The above-named agencies further appreciated that through proper and focused training, supervision and discipline of employees, the choices these employees would be required to make regarding ensuring probable cause before initiated stops, calling in codes to dispatch, proper use of force to effectuate arrests, and charging decisions would be less difficult to make and, when made correctly, would ensure the preservation of the public's constitutional Rights.

64.     By choice, neglect or reckless indifference, the above named agencies and political subdivisions, and others responsible for establishing, promoting and enforcing the policies of the State of Idaho affecting officers and other employees either:

a.      Made it the custom, rule or practice, or caused it to be the custom, rule or practice to stop vehicles without probable cause;

b.      Made it the custom, rule or practice, or caused it to be the custom, rule or practice to call in codes that are more dangerous and serious than warranted thereby increasing the risk of danger to citizens and the public;

c.      Made it the custom, rule or practice, or caused it to be the custom, rule or practice to use excessive force when questioning a suspect or effectuating an arrest;

d.      Made it the custom, rule or practice, or caused it to be the custom, rule or practice to conduct illegal seizures of individuals and their property;

e.      Failed or refused to adequately supervise employees regarding the above described conduct;

f.      Failed or refused to promptly and appropriately discipline employees and officer who caused the above described conduct.

65.    Further, the above-named Defendants violated Mr. Rice's constitutional Rights pursuant to the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution through their intentional and/or negligent and/or criminally negligent acts of assault, battery, excessive force, false arrest and false imprisonment.

66.    Further, the actions of the above-named Defendants constitute "municipal action."

67.    As a direct and proximate result of the foregoing, there existed a climate, policy and/or custom of deliberate indifference to the constitutional Rights of the Plaintiff at the above-named agencies and political subdivisions of the State of Idaho.

68.    The above facts in Count I establish "municipal liability" because the "municipal action" was taken with the requisite degree of culpability and was affirmatively and causally linked to the deprivation of a federal right.

69.     The inactions and/or omissions of these agencies, employees, and individuals were taken or omitted under color of State law, involved State action and municipal action, and caused the deprivation of the Plaintiff's Rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution and comparable provisions of the Idaho Constitution and other laws, and caused the constitutional deprivations as well as causing the Plaintiff to suffer substantial injury, loss and damage.

## COUNT II
### Gross Negligence/ Deliberate Indifference

70.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

71.     Defendants owed a duty of care toward Plaintiff not to abridge his constitutionally protected Rights.

72.     Defendants were grossly negligent and/or deliberately indifferent in that they violated Plaintiff's constitutional Rights on multiple occasions.

73.     Defendants' acts and omissions were grossly negligent as distinguished from being ordinarily negligent in that the negligence of Defendants involved willful, reckless, and/or intentional so that there was not just an absence of ordinary care that should have been exercised toward Plaintiff, but Defendants' conduct exhibited a degree of negligence and lack of care substantially greater than that which constitutes ordinary negligence.

74.     As a direct and proximate result of Defendants' grossly negligent conduct, Plaintiff has suffered damage in an amount exceeding $100,000, to be determined at trial.

## COUNT III
### Intentional/Negligent Infliction of Emotional Distress

75.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

76.     Defendants' acts and/or omissions were intentional and/or reckless, were made with a blatant disregard for the Plaintiff's Rights, and fell below the applicable standards of care owed to the Plaintiff by the Defendants at the times and places in question.

77.     Defendants' intentional acts and/or omissions were extreme and outrageous constituting an extreme deviation from reasonable standards of conduct and fell below the applicable standards of care owed to the Plaintiff by the Defendants at the times and places alleged hereinabove.

78.     As a direct and proximate cause of the Defendants' acts and/or omissions, Plaintiff has suffered severe mental and emotional distress, physical pain and suffering and illness, as well as defamation of character, damage to reputation, fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror and ordeal.

79.     As such, Plaintiff is entitled to recover monetary damages from Defendants representing fair and reasonable compensation for the physical and emotional distress suffered by Plaintiff as a result of the wrongful conduct alleged hereinabove in an amount to be proven at trial.

## COUNT IV
### Breach of Bailment Agreement

80.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

81.     Defendants' seizure of Plaintiff's cash upon arrest created a bailment agreement by law.

82.     By refusing and failing to return to Plaintiff his seized property, Defendants breached that agreement.

83.     By subjecting Plaintiff to fees, conditions, and other terms of a third party to which he did not agree, Defendants breached the bailment agreement.

84.    Defendants' actions in creating and administering a system by which every prisoner carrying cash money is subjected to the same conduct was willful, malicious, reckless, grossly negligent, and wanton.

85.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be proven at trial.

**COUNT V**
**Class Action**

86.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

87.    The class in this case is likely in the thousands, thereby making joinder of all members impracticable.

88.    The questions of law and fact with regard to Defendants' breach of the bailment agreement are common to all members.

89.    The claims of the representative party are typical of the claims of the class.

90.    The representative party will fairly and adequately protect the interests of the class.

**REQUEST FOR ATTORNEY FEES**

Plaintiff is entitled to an award of his reasonable attorney fees and costs of suit pursuant to R.S. § 722 (derived from acts Apr. 9, 1866, ch. 31, § 3), 14 Stat. 27; Pub. L. 94–559, § 2, codified at 42 U.S.C. § 1988, and all other applicable law.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to Article the seventh of the Bill of Rights; and, for the preservation of the constitutional right of trial by jury as directed in the enabling act (act of June 19, 1934, 48 Stat. 1064), F.R.C.P. Rule 38, Federal Rules of Civil Procedure; and 62 Stat. 951; Pub. L. 85–315, part V, § 152, codified at 28 USC § 1861.

11
VERIFIED COMPLAINT

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment of this Court as follows:

1.      For money damages to Plaintiff Lee Arthur Rice II from Defendants in excess of $100,000 in a sum to be determined at trial;

2.      For punitive damages in a sum to be determined at trial.

3.      For Plaintiff's reasonable attorney fees incurred in prosecuting this action;

4.      For costs of suit herein;

5.      For an order certifying a class of Plaintiffs as requested herein, pursuant to F.R.C.P. Rule 23, Federal Rules of Civil Procedure, upon further motion by Plaintiff;

6.      Defendant be required to pay to all class members, once certified:

   (a)   Damages for the costs and expenses of improperly diverted monetary funds;

   (b)   General damages for the account holders in an amount to be proven at trial;

   (c)   Attorney fees and costs, pursuant 42 U.S.C. § 1988 and any other applicable law; and,

7.      For such other and further relief as the Court deems just and equitable.

Respectfully submitted.

*Lee Arthur Rice II*

1

2

3    ACKNOWLEDGEMENT AND JURAT BASED ON PERSONAL KNOWLEDGE

4

5              I, Lee Arthur Rice II, Plaintiff, swear that I am domiciled in the

6              state of Idaho. I swear that I have first hand personal knowledge

7              of the facts alleged in this VERIFIED COMPLAINT and that the

8              information contained in this VERIFIED COMPLAINT is true,

9              correct and complete.

10                             Signature of Plaintiff:

11    State of Idaho  )            _Lee Arthur Rice II_____
                     ) ss:
12    County of Ada  )             Lee Arthur Rice II

13    Signed and sworn to before me this the ___Oct 9th_____ day of the ~~fifth~~ tenth month,

14    A.D. twenty thirteen, to certify which, witness my hand and seal of office.

15

16    ☐  Personally known to me

17
      ☒  Produced ID: _IDDL: IJ155284H   ISS: 03/07/2008  Exp: 02/12/2016_
18

19

20    ┌─────────────────────────┐
      │   CAROLINE CARNAHAN      │   _____
21    │     Notary Public        │   Notary Public for the State of Idaho
      │    State of Idaho        │
22    └─────────────────────────┘   Commission expires: _May 31 2017_

23

24

25

26

27

28

                                  13
                          VERIFIED COMPLAINT

1
2
3
4

<u>CERTIFICATE OF SERVICE</u>

5
6
I, the undersigned, HEREBY CERTIFY that on this _____ day
7
of the _____ month, A.D. twenty-thirteen, a true, correct and complete copy
8
of the Complaint was sent postage pre-paid by the method indicated below to the following
individual at the following address:
9
10
11
☐  First Class Mail
12
☐  Certified Mail
☐  Registered Mail
13
☐  Overnight Mail
14
☐  Hand Delivered
15
☐  FAX
☐  Other _____
16
17
_____
18
_____
19
Lee Arthur Rice II
20
21
22
23
24
25
26
27
28

14
VERIFIED COMPLAINT