# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEE ARTHUR RICE, II, an individual<br><br>Plaintiff,<br><br>v.<br><br>JANET MURAKAMI, DALE MOREHOUSE, JEFFEREY A. HILL, TONY FORD, MARK ABERCROMBIE, NICK SHAFFER, and JOHN DOES 1-20,<br><br>Defendants. | Case No. 1:13-cv-00441-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are Motions for Summary Judgment filed by defendant Murakami, defendants Abercrombie and Hill, and defendant Ford. The court heard oral argument on October 1, 2014, and took the motions under advisement. The Court will grant the motions in part, dismissing all claims except the claim for excessive force.

## SUMMARY

In 2011, during the early morning hours of the day after Christmas, Idaho State Trooper Janet Murakami pulled plaintiff Lee Arthur Rice over for failing to signal a lane change. When she asked him to turn over his driver's license, he refused. When she informed him he was under arrest, he refused to get out of the car. While uncooperative,

Rice conveyed no threats, either verbally or physically, and merely protested in a calm voice. As Rice remained seated in his car, Officer Murakami called in a Code 3 alarm, signally that she was exposed to a life or death situation. Immediately, seventeen officers responded. Predictably, they used aggressive force to pull Rice from the car, push him to the ground, and place him in handcuffs. Rice alleges that even though he was not resisting arrest, the officers struck him, kneed him in the back, and wrenched his arms and shoulders, causing permanent injury. The officers dispute that account, and claim Rice was resisting arrest. In this summary judgment proceeding, the Court must assume Rice's account is true.

Rice sued the officers, alleging – among other charges – that they used excessive force. Four of the officers – including Officer Murakami – seek summary judgment, arguing that their actions were proper. The record raises troubling questions about the justification for the Code 3 alarm, but its result was predictable: Responding officers would understandably be quick to use aggressive force to rescue a fellow officer who they believed was in serious danger. While Officer Murakami will have to explain to a jury why she called in the Code 3 alarm, is it fair to allow this lawsuit to go forward against other officers who were relying on that alarm? An answer to this question is not written on a blank slate – although the Court might reach a different result, Ninth Circuit precedent is binding, and it directs that the other officers must also proceed to a jury trial

on the excessive force charge. While numerous other charges are subject to dismissal –
as explained below – the excessive force charge remains.

## BACKGROUND

On December 26, 2011, at approximately 3:30 a.m., plaintiff Rice was traveling
on I-84 with his family. Idaho State Trooper Janet Murakami was following Rice, with
her dash-cam recording her travel. The video shows Rice signal to move to the left lane,
and then, about two to three seconds later, move into that lane. Officer Murakami
changed lanes herself to follow him. Rice traveled in that lane for a few minutes, and
then drifted over to the lane to his right about the same time as he put on his right blinker.
Officer Murakami turned on her flashing lights and pulled Rice over – he complied
immediately and both cars stopped on the far right emergency lane.

Murakami approached the vehicle, and asked to see Rice's license several times.
Rice replied by asking to speak with Murakami's supervisor, verbally identified himself
to Murakami, and showing Murakami his license through the window. Unsatisfied with
Rice's response, Murakami contacted dispatch for a Code 3 assistance. A Code 3
response is to be reserved for life and death emergency calls. *See Code 3 Police
Response Changes* (stating that "[a] Code 3 response from police needs to be reserved for

life and death emergency calls").[1] Officers are informed that a Code 3 dispatch requires an emergency response with lights and sirens utilized from responding officers. *Ford Affidavit (Dkt. No. 52-2)* at ¶ 5,

Before assistance arrived, Officer Murakami approached Rice's vehicle and informed him that if he did not produce his license or exit his vehicle he would be under arrest for obstruction. Rice remained in his vehicle and continued to ask to speak with Officer Murakami's supervisor. Officer Murakami then placed Rice under verbal arrest and informed Rice that she and the responding officers would remove Rice from the vehicle by force if he did not comply.

Boise police officers Abercrombie and Hill, and Meridian police officer Ford were among the 17 officers that responded to Murakami's call for Code 3 assistance. When officers began to arrive on the scene, Officer Murakami and one other officer approached the front of Rice's vehicle and pulled Rice out of the car. The officers then brought Rice to the back of the vehicle where a third officer grabbed Rice by the arm, and the two assisting officers pulled Rice to the ground. Rice was not asked to put his hands behind his back or onto the back of the vehicle before being taken to the ground.

Officers Abercrombie and Hill arrived at the scene as Rice was being pulled out of

---

[1] This can be found at http://police.cityofboise.org/home/news-releases/2009/02/02-03-09-code-3-police-responsechanges/

his vehicle and observed Rice being taken to the back of the vehicle and thrown to the ground. *See Abercrombie Affidavit (Dkt. No. 60-2)* at ¶¶ 4-8; *Hill Affidavit (Dkt. No. 60-3)* at ¶ 3-6. After Rice was taken to the ground, Officer Hill approached Rice and stood above his head, holding him down with one hand on Rice's back and one hand on Rice's neck. Officer Abercrombie then approached Rice, and after situating himself at Rice's right shoulder, aided in handcuffing Rice by pulling Rice's right arm behind his back. During the handcuffing, Officer Abercrombie pushed his knee into Rice's back and remained there until Rice had been handcuffed and patted down. Officer Ford arrived on the scene after Rice had already been taken to the ground, immediately approached Rice, and held down Rice's legs as he was being handcuffed. *Ford Affidavit, supra* at ¶ 7.

Although Rice protested verbally, he claims he did not physically resist arrest. *Rice Declaration (Dkt. No. 51-1)* at ¶ 14. Additionally, Rice states that although he was not struggling with officers while he was held down, officers struck and kneed him, and wrenched his arms and shoulders, and twisted his fingers. *Id.* at ¶ 13. After Rice was handcuffed, Abercrombie, Ford and another officer patted Rice down, and Ford placed some of Rice's personal property in the back of Rice's vehicle. Officers Abercrombie and Ford then escorted Rice to Officer Murakami's patrol car. Rice claims to have suffered long-term physical injuries to his back, hips, knees and emotional and mental distress due to the arrest. *Id.* at ¶ 24.

## PROCEDURAL HISTORY

Rice brought suit under 42 U.S.C. § 1983 against officer Murakami and the seventeen responding officers, alleging four constitutional violations: (1) unlawful search and seizure; (2) excessive force; (3) false arrest; and (4) denial of timely assistance of defense counsel. To date, twelve named defendants have been dismissed. *See Orders (Dkt. Nos. 38, 42 & 75)*. Currently six named defendants remain in the action: Officers Murakami, Morehouse, Hill, Ford, Abercrombie and Shaffer. Four of those Officers – Murakami, Abercrombie, Hill, and Ford – have moved for summary judgment as to all claims.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

## ANALYSIS

## **Officer Murakami – Traffic Stop**

Rice argues that Officer Murakami had no right to pull him over.  Under the Fourth Amendment, police may make a brief investigatory stop of a moving vehicle if they have a reasonable suspicion that an occupant of the car has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22 (1968).  Reasonableness is assessed by weighing the intrusion on an individual's privacy against the need to promote legitimate governmental interests.  *Virginia v. Moore,* 553 U.S. 164 (2008).  But "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Id.* at 171.  The failure to signal prior to a lane change, when state law requires a signal, constitutes sufficient probable cause to justify a *Terry* stop.  *U.S. v. Harris,* 526 F.3d 1334, 1338 (11th Cir. 2008).

Idaho law required Rice to signal "continuously for not less than five (5) seconds" before changing lanes.  *See* Idaho Code § 49-808(1) & (2).  Officer Murakami's dash-cam video shows conclusively that Rice changed lanes (from the far left lane into the middle lane) without properly signaling.  After Officer Murakami observed this violation, she activated her flashing lights and pulled Rice over to the side of the road.  This traffic stop was proper under *Terry* as a matter of law.

**Officer Murakami – Demand For License & Charge of Obstruction**

Rice argues that Officer Murakami had no right to demand his license and then charge him with obstruction for failing to produce the license. Officer Murakami argues that she is entitled to qualified immunity from this claim.

To determine whether an individual officer is entitled to qualified immunity, the Court asks (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). With regard to the first inquiry, Idaho law requires a driver to "surrender" his driver's license to a police officer upon demand. *See* Idaho Code § 49-316. A state law requiring a driver to identify himself upon demand by the police – at least where there is no evidence that this would incriminate the person – does not run afoul of the Fourth or Fifth Amendments. *Hiibel v Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 186 (2004) (upholding Nevada law requiring driver to identify himself upon demand by police). In that case, the driver "refused to identify himself only because he thought his name was none of the officer's business." *Id.* at 190. There was no "articulated real and appreciable fear that his name would be used to incriminate him." *Id.* Accordingly, the Court rejected his Fifth Amendment objection to being arrested and convicted for refusing to identify himself.

Other circumstances, however, might trigger a Fifth Amendment claim, as the Court recognized in concluding its decision in *Hiibel:*

Still, a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense. In that case, the court can then consider whether the privilege applies, and, if the Fifth Amendment has been violated, what remedy must follow. We need not resolve those questions here.

*Id.* at 191. In this case, Officer Murakami's counsel presented evidence that Rice's driver's license was suspended at the time of the traffic stop. Although Rice disputes this, Officer Murakami's submission at least creates a question whether Rice's license was suspended, raising the possibility that if he surrendered his license (and allowed her to check the license's status), he would incriminate himself.[2]

But that possibility does not need to be examined to resolve the qualified immunity issue. Even if Officer Murakami violated Rice's Fifth Amendment right to not incriminate himself, that right was not clearly established at the time she did so – *Hiibel* only noted in dicta that a right might exist in some cases, and the parties cite no authority holding that the right was clearly established in 2011 during the time of the traffic stop. Thus, Officer Murakami had no reason to ignore the Idaho law requiring Rice to surrender his driver's license. And his failure to surrender the license justified the charge

---

[2] Rice moved to strike Officer Murakami's submission, consisting of an affidavit of Karen Schoenhut, who is employed with Idaho's Division of Motor Vehicles, wherein she states that Rice's license was suspended at the time of the traffic stop. *See Schoenhut Affidavit (Dkt. No. 68-1).* As explained above, this submission may help Rice more than hurt him – thus the Court declares the motion to strike to be moot.

of obstruction.[3]  Under these circumstances, it was objectively reasonable for Officer

Murakami to demand Rice's license and charge him with obstruction when he refused to

surrender the license, and she is therefore entitled to qualified immunity for those actions.

## Officer Murakami – Arrest

"If an officer has probable cause to believe that an individual has committed even

a very minor criminal offense in his presence, he may, without violating the Fourth

Amendment, arrest the offender."  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354

(2001).  Officer Murakami observed Rice (1) change lanes without a proper signal, and

(2) refuse to surrender his driver's license as required by Idaho law.  Hence, the arrest

was proper under *Atwater.*

## Officer Murakami – Excessive Force

Rice alleges that Officer Murakami used excessive force in arresting him.  He

alleges that after Officer Murakami told him he was under arrest, he "unlocked the door

and began to exit from the car."  *See Rice Affidavit* at ¶ 10.  At that moment, he alleges,

"several officers [including Officer Murakami] forcefully seized" him and pulled him out

of the car.  *Id.*  As these officers walked Rice to the back of the car, Officer Murakami

---

[3] Rice alleges he showed the license to Officer Murakami through the driver-side window as he sat in the driver's seat and she stood outside the car.  This is not the "surrender" of the license that the statute requires.

stepped back and was not engaged in the tripping and taking down of Rice. Once the other officers subdued Rice, Officer Murakami placed handcuffs on him.

The use of force violates the Fourth Amendment if "it is excessive under objective standards of reasonableness." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The analysis must be based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. This standard requires the Court to balance the amount of force applied against the need for that force to determine what a reasonable juror could decide. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.2001). In determining the need for force, the Court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Here, the initial issue is whether Officer Murakami's actions in forcibly removing Rice from the vehicle constituted excessive force. The Court finds that they do not. Officer Murakami had made a valid arrest – as discussed above – and so was entitled to demand that Rice exit the car. Rice refused to do so a number of times. Eventually, he started to exit the vehicle when Officer Murakami pulled him out. By Rice's own testimony, his exit, and Officer Murakami's efforts to pull him out, were simultaneous. She had the right by that time to use force to pull him out as he was under arrest but had

been refusing to exit the car for some time. *Graham*, 490 U.S. at 396 (noting "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it"). She did not throw him out of the car, and the video shows that he exited to a standing position – he does not allege otherwise. The force employed by Officer Murakami was minimal, and constituted a reasonable effort to effectuate the arrest. The Court finds as a matter of law that Officer Murakami did not use excessive force in removing Rice from the vehicle.

There is also no evidence that she used excessive force in handcuffing Rice. As discussed above, the arrest was proper and the arresting officer is entitled to use a reasonable amount of force to effectuate the arrest. There is no evidence that in handcuffing Rice, Officer Murakami did anything other than place the handcuffs on him.

For all of these reasons, the Court finds that Officer Murakami did not use excessive force on Rice either in removing him from the car or in handcuffing him.

**Officer Murakami – Code 3 Alarm**

By calling in a Code 3 alarm, Officer Murakami signaled to responding officers that she was in serious danger, a "life or death" situation. Yet Rice was merely protesting verbally – in a calm voice devoid of threats – and he remained seated in his car. The responding officers had no way of knowing this, however, and would assume from the Code 3 alarm that Rice posed a dangerous threat to a fellow officer and needed to be

taken down quickly and aggressively. The officers' assumption would be no surprise to

Officer Murakami – she knew what a Code 3 alarm meant. These circumstances at least

create an issue of fact over whether Officer Murakami should have known that her Code

3 would result in excessive force being used against Rice.

Under § 1983, "a [person is] responsible for the natural consequences of his

actions." *Tatum v. Moody,* 2014 WL 4627967 (9th Cir. Sept. 17, 2014) (quoting *Monroe*

*v. Pape*, 365 U.S. 167, 187 (1961)). Thus, a § 1983 defendant is liable for "setting in

motion a series of acts by others which the actor knows or reasonably should know would

cause others to inflict the constitutional injury." *Id.* at *8 (quoting *Crowe v. Cnty. of San*

*Diego,* 608 F.3d 406, 430 (9th Cir.2010)). Because there are questions of fact over

whether Officer Murakami's Code 3 alarm set in motion a series of events that she should

have known would result in excessive force being used against Rice, the Court will deny

her motion for summary judgment on this issue.

**<u>Abercrombie and Hill  - Excessive Force</u>**

Rice alleges that Officers Abercrombie and Hill used excessive force on him after

he had been taken down to the ground by other officers. Both Officers seek summary

judgment on this excessive force claim. To resolve this issue, the Court needs to examine

the record concerning their conduct.

The two Officers responded to the Code 3 alarm, and arrived on the scene at the

same time just as Rice was being removed from his vehicle. *See Abercrombie Affidavit*

*(Dkt. No. 60-2)* at ¶¶ 4-8 ; *Hill Affidavit (Dkt. No. 60-3)* at ¶¶ 3-6.  They observed as Rice was taken to the back of the vehicle and then thrown to the ground by other officers. Rice claims that although he was verbally protesting, he did not physically resist arrest once removed from the vehicle.  *Rice Declaration, (Dkt. No. 51-1)* at ¶ 14.

Once Rice was on the ground, Officers Abercrombie and Hill joined the other officers in subduing Rice.  Officer Hill held Rice's neck and back, while Officer Abercrombie pulled Rice's right arm behind him to assist in handcuffing, pushing his knee into Rice's back.

Rice alleges that although he was not resisting, the officers used enough force to cause long-term injuries to his back, hips, knees and emotional and mental distress.  *Id.* at ¶ 24.  Rice's account is not conclusively refuted by the dash-cam video.  The scrum of officers surrounding Rice makes it difficult to determine whether he was resisting arrest. Consequently, this case is not like *Scott v. Harris*, 550 U.S. 372 (2007), where the Court found that the dash-cam video so "utterly discredited" plaintiff's account of a car chase that "no reasonable jury could believe" plaintiff.  *Id.* at 380.  The video here is not nearly so clear.  Thus the Court will credit Rice's account for purposes of this summary judgment proceeding, and assume that he was not resisting and that he has suffered long term injuries as a result of the officers' force.

With these circumstances in mind, the Court examines two cases that set the parameters for the use of excessive force at the time of the arrest in this case.  In *Luchtel*

*v. Hagemann*, 623 F.3d 975 (9th Cir. 2010), the Circuit granted summary judgment to two officers who pinned plaintiff Luchtel to the ground and handcuffed her, tearing her shoulder ligaments and leaving bruises and abrasions over much of her body. *Id.* at 980. The Circuit held that this use of force was reasonable because Luchtel posed a danger to herself and others. *Id.* at 978. Specifically, she was under the influence of cocaine, had threatened suicide, used a neighbor to shield herself during the confrontation with police, and resisted the officers during their arrest. *Id.* at 980. These facts, the Circuit held, showed that the force used was reasonable because Luchtel posed a dangerous threat to herself and others. *Id.*

But where the arrestee is not so threatening, less force is justified. In *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003), the Circuit held that it was objectively unreasonable for an officer to throw the plaintiff to the ground and twist her arm while handcuffing her when the plaintiff was only verbally resisting and had not attempted to leave. *Id.*

Here, the Court must assume the truth of Rice's claim that he was not resisting arrest. If that was the extent of the record, *Meredith* would govern the outcome and summary judgment would be denied.

But the record contains more: Officers Abercrombie and Hill were responding to a Code 3 alarm, signaling that an officer is in a life or death emergency. Any reasonable officer responding to a Code 3 alarm would be compelled to take quick and aggressive

action to rescue the signaling officer from a highly dangerous situation.  There is typically no time for the responding officer to determine if the Code 3 alarm was called in by mistake.  *See Torres v. City of Los Angeles,* 548 F.3d 1197, 1212 (9th Cir. 2008) (holding that "[w]hile all officers ... have an ongoing duty to make appropriate inquiries regarding the facts received, . . . [w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous").

But what if the responding officer arrived on the scene and had time to watch events unfold before taking action?  And what if he or she was watching long enough to realize (or for a reasonable officer to realize) that the suspect was not resisting and did not pose a threat?  At that point, the Code 3 alarm would no longer serve as a justification for the aggressive use of force. *Id.* at 1212 (holding that "[t]he lynchpin is whether the officer's reliance on the information was objectively reasonable").

On what side of the line does this case fall?  What does the record tell us about whether Officers Abercrombie and Hill had enough time to watch events unfold so that the Code 3 alarm no longer could be used as a justification for aggressive force?

Officer Abercrombie arrived on the scene to see officers removing Rice from the car.  *See Abercrombie Declaration, supra* at ¶ 5-6.  Officer Hill arrived at precisely the same time as Officer Abercrombie, and approached Rice as he was being led to the back of his car.  *See Hill Declaration, supra,* at ¶ 3-5.

Thus, Officers Abercrombie and Hill had mere seconds between Rice's removal from the car and his takedown by other officers to evaluate the necessity for the Code 3 alarm. There was nothing in these few seconds that would have warned a reasonable officer who had just come upon the scene that the Code 3 alarm was a mistake and that quick and aggressive action was not necessary.

Thus, even though Rice was not resisting, and apparently posed no threat, Officers Abercrombie and Hill were entitled to treat him as a reasonable officer would treat a dangerous suspect – aggressively. Under that standard, was their force excessive?

The Court turns first to Officer Abercrombie, who pushed his knee into Rice's back and remained there until had been handcuffed and patted down. Similar facts are found in *LaLonde v. County of Riverside,* 204 F.3d 947 (9th Cir. 2000). There, officers questioned plaintiff LaLonde about complaints that he was making loud noises in his apartment. The officers had been told previously that LaLonde "owned a rifle, that he was hostile to law enforcement, and that they should be careful because he might be willing to use the weapon." *Id.* at 956. In other words, LaLonde was a dangerous suspect, putting the officers on high alert, just as was the case here with Rice.

The officers decided to arrest LaLonde for obstruction, the same charge for which Rice was arrested. LaLonde resisted initially, and struggled with the officers. But after being knocked to the ground and doused with pepper spray, he stopped resisting. Nevertheless, an officer "forcefully put his knee into LaLonde's back, causing him

significant pain" and permanent injury, the same allegations Rice makes in this case. *Id.*
at 952. The Circuit held that "if the extent of the injury to LaLonde's back is serious
enough, a jury could conclude that [the arresting officer] used force in excess of what was
reasonable . . . ." *Id.* at 959. The Circuit held that "LaLonde had the right to have the
jury assess the evidence supporting his claim of excessive force." *Id.*

The *LaLonde* case compels this Court to deny summary judgment to Officer
Abercrombie. He placed his knee on Rice's back, and Rice alleges that it caused him
permanent injury, essentially the same circumstances that warranted a jury trial in
*LaLonde*. While it would appear to the Court that the Code 3 alarm would justify such
force, the officers in *LaLonde* encountered a similar warning of danger but the Circuit
nevertheless held that a jury trial was warranted. If the Court were deciding his motion
on a blank slate, the Court would find that the Code 3 alarm justified the force that
Officer Abercrombie used. But *LaLonde* is too similar to ignore, and it dictates that the
Court deny Officer Abercrombie's motion and submit the issue to the jury.

The Court turns next to Officer Hill's conduct. He stood above Rice's head after
Rice had been taken down by other officers. Officer Hill alleges that he held Rice down
with one hand on Rice's back and one hand on Rice's neck. Rice alleges that Officer Hill
was one of the officers who "repeatedly struck . . . me" and "wrenched my arms [and]
shoulders . . . ." Once again, the video does not conclusively refute Rice's account.
*Scott*, 550 U.S. at 380-81. It is very difficult from the video to tell precisely what Officer

Hill is doing because his body is largely blocked from view by Officer Abercrombie. Consequently, the Court must accept Rice's account as true in this summary judgment proceeding. Under *LaLonde*, that is sufficient to deny the motion.

**Defendant Ford – Excessive Force**

The analysis applied to Officer Hill applies to Officer Ford. Rice alleges that Officer Ford is one of the officers who struck him and wrenched his arms and shoulder. The video is not conclusive. Again, *LaLonde* dictates denying Officer Ford's motion for summary judgment.

**Defendants Abercrombie, Hill, and Ford – Illegal Search and Seizure, False Arrest, and Denial of Timely Assistance of Council.**

The Ninth Circuit has found that qualified immunity must be granted where an officer did not play a part in the action giving rise to the claim. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1172 (9th Cir. 2013) (granting an officer qualified immunity for an act in which he played no part). There is no evidence on the record that Abercrombie, Hill or Ford played any role in Rice's imprisonment or the search of Rice's vehicle. Additionally, it is undisputed that Abercrombie, Hill and Ford were not present when Rice was placed under verbal arrest.

Defendants Abercrombie and Hill state that neither of them searched Rice's person or vehicle. Defendant Ford did not address whether he searched Rice's person, only stating he put Rice's personal property in Rice's vehicle. Plaintiff did not respond to any of these allegations. The Court notes that the dash-cam presents some evidence that

Abercrombie and Ford patted Rice down after he was handcuffed. However, Plaintiff did not argue this before the court. Additionally, it is well accepted that that an officer may search a person incident to a valid arrest. *Charles v. U.S.*, 278 F.2d 386, 388 (9th Cir. 1960). As the Court has found the arrest to be valid, the search incident to arrest would also be valid. The Court, therefore, grants the motion for summary judgment filed by Abercrombie, Hill, and Ford on the remaining claims.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions for summary judgment (docket nos. 43, 52, & 60) are GRANTED IN PART AND DENIED IN PART. The motions are denied with regard to the claim of excessive force relating to events occurring after Rice was taken to the ground. The motions are granted as to all other claims.

IT IS FURTHER ORDERED, that the plaintiff's motion to strike (docket no. 68) is DEEMED MOOT.

DATED: December 18, 2014

B. Lynn Winmill
Chief Judge
United States District Court