**JAN M. BENNETTS**
ADA COUNTY PROSECUTING ATTORNEY

**ERICA J. WHITE**
**HEATHER M. McCARTHY**
**CATHERINE A. FREEMAN**
Deputy Prosecuting Attorney
Civil Division
200 W. Front Street, Room 3191
Boise, ID 83702
Telephone: (208) 287-7700
Facsimile: (208) 287-7719
Idaho State Bar Nos. 7475, 6404, & 9223
Email: civilpafiles@adaweb.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LEE ARTHUR RICE II, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:13-CV-00441-BLW** |
| | ) | |
| vs. | ) | **DEFENDANTS DALE** |
| | ) | **MOREHOUSE AND NICK** |
| DALE MOREHOUSE, JEFFREY A. HILL, TONY | ) | **SHAFFER'S TRIAL BRIEF** |
| FORD, MARK AMBERCROMBIE, NICK | ) | |
| SHAFFER, and JOHN DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————————— | ) | |

Pursuant to the Stipulation for Scheduling and Planning [Dkt. 146] and the Court's

Docket Entry Order of January 25, 2018 [Dkt. 147] and Dist. Idaho Loc. Civ. R. 16.3,

Defendants Morehouse and Shaffer submit this Trial Brief.

## I.     INTRODUCTION

After summary judgment and the Ninth Circuit's ruling, the only remaining cause of

action in this matter is a § 1983 excessive force claim under the Fourth Amendment that the

remaining Defendants used excessive force in attempting to handcuff the Plaintiff after the Plaintiff was taken to the ground, and that such force resulted in bodily injuries to the Plaintiff.

## II.     FACTUAL BACKGROUND

On December 26, 2011, at approximately 03:30 in the morning, Idaho State Police Corporal Murakami was traveling westbound on Interstate 84 in Ada County, Idaho, when she performed a traffic stop of a vehicle operated by Plaintiff.  Corporal Murakami based the traffic stop upon Plaintiff's failure to signal for at least five (5) seconds prior to making lane changes, as required by Idaho Code § 49-808.  Corporal Murakami also harbored a suspicion that Plaintiff may have been driving under the influence, due to his traveling ten (10) miles under the speed limit and touching the fog line a number of times.

Plaintiff pulled his vehicle over alongside the interstate on the shoulder as shown on the dash cam video at the 03:20 mark.  Plaintiff's vehicle remained running, as indicated by the visible exhaust on the dash cam video, and remained running throughout the entire encounter.  Corporal Murakami first approached Plaintiff's vehicle on the passenger side and requested Plaintiff's driver's license, registration, and proof of insurance.  Plaintiff refused to comply, and he and his passenger, later identified as Harmony Black, challenged Corporal Murakami and insisted she had no right to pull them over.  After making two separate trips to Plaintiff's vehicle, and asking him numerous times to comply by handing over his documentation, Corporal Murakami eventually declared Plaintiff under arrest and asked him to step out of his vehicle. Plaintiff continued to challenge Corporal Murakami and would not exit his vehicle.  Corporal Murakami then placed a Code 3 call requesting assistance from other law enforcement units.

While the above was transpiring, numerous patrol units from the Ada County Sheriff's Office had gathered at the Shari's restaurant off the interstate in Meridian to have a team

breakfast to celebrate the Christmas holiday.  The deputies received Corporal Murakami's Code 3, call but the details were sparse, merely advising an Idaho State Police patrol unit needed assistance on Interstate 84.  A Code 3 call is the highest priority level for law enforcement radio calls, and indicates an urgent and immediate need for assistance.  The Ada County patrol units immediately left Shari's and headed toward the reported location of the Idaho State Police unit. Numerous officers from other law enforcement agencies also responded, including officers from the Boise Police Department and Meridian Police Department.

Ada County Sheriff's Office Sergeant Pat Calley, Deputy Dale Morehouse, and Deputy Nick Shaffer responded by driving their respective patrol vehicles eastbound on the interstate and were the first officers to arrive on scene.  Upon their arrival, they observed Corporal Murakami's patrol car parked along the westbound shoulder approximately 15 feet behind Plaintiff's vehicle.  So as to not delay their response, the three Ada County officers parked their vehicles in the eastbound lane along the center median and hopped across the jersey barrier to make contact with Corporal Murakami.  Corporal Murakami was standing by her patrol vehicle in a defensive position, and informed the Ada County deputies that "[h]e's just not wanting to comply with my instructions, he's already been told he is under arrest.  All I wanted was his license, so I'm just gonna need somebody to help me to get him out of the car."

Deputy Morehouse agreed to assist Corporal Murakami and accompanied her to Plaintiff's car.  The officers found Plaintiff had locked himself inside his still running car. Corporal Murakami continued to repeatedly ask Plaintiff to get out of the vehicle, but he stood firm in his resistance.  Eventually, Plaintiff rolled his window down a few inches and Corporal Murakami was able to reach through the partially open window and unlock the door from the inside.  Plaintiff remained noncompliant and would not voluntarily exit his vehicle, so Corporal

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 3

Murakami and Deputy Morehouse reached inside the vehicle and pulled Plaintiff up and out of the vehicle.

Once Plaintiff was standing, Deputy Morehouse took hold of Plaintiff's right arm in a "police lead" position.  The officers attempted to pull Plaintiff's arms behind his back for cuffing, but Plaintiff tensed his arms and resisted their efforts.  Deputy Morehouse was taken aback by how tall and strong Plaintiff was, and found himself in a struggle to maintain his hold on Plaintiff's right arm.  Rather than continuing to struggle with Plaintiff on the dangerous, dark-lit interstate, officers struggled to lead Plaintiff toward a safer area behind the rear fender of Plaintiff's vehicle. As the trio continued to the safer location, Plaintiff continued struggling, causing Corporal Murakami to lose her grasp of Plaintiff's left arm, and forcing her out of "police lead" position.  The dash cam video, at the 10:30 mark, shows Corporal Murakami backpedaling out of position and struggling with Plaintiff's left arm.

Deputy Shaffer, who was standing by and monitoring the action unfold, saw Corporal Murakami losing position and immediately jumped in to take her place, grabbing a hold of Plaintiff's left arm.  Deputies Morehouse and Shaffer then took Plaintiff to the ground by way of a controlled take down.  As Plaintiff landed on the ground, he freed his left arm from Deputy Shaffer's grasp and tucked the arm underneath his chest.

The Deputies harbored concerns that Plaintiff freed his left arm in an attempt to access a weapon.  Thereafter, additional officers from various agencies joined in the efforts to gain control of Plaintiff.  Despite being outnumbered five to one and repeatedly being ordered to comply with the officers' requests, Plaintiff continued to physically and verbally resist, and it took the five officers well over a minute to finally overcome Plaintiff's resistance and pull his arms behind his back and place him into handcuffs.

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 4

## III.    ANALYSIS

**A.    The Defendants' use of force was objectively reasonable in light of the facts and circumstances confronting them.**

Excessive use of force claims are evaluated for objective reasonableness, based upon the information the officers had when the conduct occurred.  *Graham v. Conner*, 490 U.S. 386, 396, (1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*  Fourth Amendment jurisprudence [recognizes] that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Id.*

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (citing *Graham*, 490 U.S. at 396).  The Court should first consider the nature and quality of the alleged intrusion; then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) "whether the suspect posed an immediate threat to the safety of the officers or others," and (3) whether the suspect was "actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citation omitted).  These factors are not exclusive, and the Court must consider the totality of the circumstances.  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citation omitted).

Qualified immunity applies if *either* (1) the plaintiff's facts do not establish the violation of a constitutional right or (2) the right was not clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 5

The second prong of the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "To be clearly established, a right must be sufficiently clear that **every** reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted) (emphasis added).

As the Supreme Court has frequently stated, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Immunity applies unless existing precedent has "placed the statutory or constitutional question 'beyond debate.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). The Court must allow "for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397.

In its recent decision in *White v. Pauly*, the Supreme Court reversed the denial of qualified immunity in the context of a Fourth Amendment excessive force claim. 137 S. Ct. 548 (January 9, 2017). In doing so, the Court observed that "[i]n the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases." *Id*. at 551. The Court explained that it "has found this necessary both because qualified immunity is important to 'society as a whole,' and because as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'" *Id*. at 551-52 (citation omitted).

The Supreme Court emphasized that it had "explained decades ago, the clearly established law must be 'particularized' to the fact of the case." *Id*. at 552 (citing *Anderson v. Creighton*, 483

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 6

U.S. 635, 640 (1987).  The Court found it "again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"  *Id.* (citing *Ashcroft*, 563 U.S. at 742).  The law could not be so generally defined or "[p]laintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Id.* (citation omitted).

The Supreme Court found that the Tenth Circuit had misunderstood the "clearly established" analysis and failed to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.  *White*, 137 S.Ct. at 552.  The Court explained that the general statement of law concerning excessive force, as set forth in *Graham v. Conner*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985), which the appellate court had relied on in denying qualified immunity, "[did] not by themselves create clearly established law outside 'an obvious case.'"  *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) per curiam) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  Absent an "obvious violation" or a "case where an officer acting under similar circumstances" was held to have violated the Constitution, an officer is entitled to qualified immunity.  *Id.*

In the wake of *White v. Pauly*, the Ninth Circuit in *S.B. v. County of San Diego* stressed that liability cannot be imposed for an alleged constitutional violation unless existing precedent has been identified that provides "clear notice" the conduct was unconstitutional under the circumstances. 864 F.3d 1010, 1015-16 (9th Cir. 2017) (citations omitted).  In *S.B.*, the Ninth Circuit specifically "acknowledge[d] the Supreme Court's recent frustration with failures to heed its holdings."  *Id.* at 1015.  It also acknowledged that "[t]he Supreme Court has 'repeatedly told courts-and the Ninth Circuit in particular-not to define clearly established law at a high level of generality.'"  *Id.* (citing *City & County of San Francisco, California v. Sheehan*, 135 S. Ct. 1765, 1775-1776 (2015)).  After

acknowledging this often-repeated admonition, the *S.B.* court stated: "[w]e hear the Supreme Court loud and clear." *Id.*

Thus, in this Circuit, the clearly established analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition," especially in Fourth Amendment claims, "where '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal citations omitted). Liability cannot be imposed on a law enforcement officer unless there was precedent at the time of the incident holding that an officer acting in similar circumstances had violated the Fourth Amendment. *Id.* at 1015-16. As discussed below, the facts do not establish a constitutional violation and even if they did, the law was not clearly established under this "exacting" standard. *See Id.* at 1016-17.

1.  **The Defendants did not use excessive force when they forcefully placed Plaintiff's hands behind his back to handcuff him.**

In *Arpin*, *supra*, a bus driver called for police assistance when the plaintiff, a 60-year-old woman, provided expired picture identification while trying to board the bus. *Arpin*, 261 F.3d at 918. The plaintiff alleged that when the police arrived, Officer Stone snatched and searched her purse, broke her eyeglasses, and, while handcuffing the plaintiff, "twist[ed] her left arm behind her with enough force to lift her off the ground and break her watch band." *Id.* The plaintiff alleged a claim for excessive force. *Id.*

Officer Stone stated that plaintiff refused to cooperate and provide her Transit Identification when requested. *Id.* at 921. He warned her that she would be arrested if she did not cooperate. *Id.* When plaintiff refused Officer Stone's request to hand over her purse, he grabbed her right hand and attempted to handcuff her. *Id.* Plaintiff stiffened her arm and attempted to pull free. *Arpin*, 261 F.3d at 921. In response, Officer Stone used physical force to handcuff plaintiff. *Id.* Plaintiff did

not set forth any specific facts disputing Officer Stone's version of the events other than her conclusory statement that she "did not resist in any way." *Id*. at 922.   Under the circumstances, the district court granted Officer Stone's motion for summary judgment finding that the force used was reasonable and it was affirmed by the Ninth Circuit. *Id*.

Turning to the present case, this matter is proceeding to a jury trial so that the jury can determine the factual disputes, including whether the Plaintiff resisted arrest by stiffening or tensing his arms and/or pulling them away from the Defendants to avoid handcuffing.   If the jury determines that the Plaintiff stiffened or tensed his arms and/or pulled them away to avoid handcuffing, the Defendants are entitled to qualified immunity, as there was no constitutional violation, parallel to the determination in *Arpin*.

The only specific allegations in the Second Amended Complaint against Defendants Morehouse and Shaffer allege that they twisted Plaintiff's arms behind his back in order to handcuff him.   Deputies Morehouse and Shaffer had to use some force to move Plaintiff's hands behind his back because he tensed his arms to prevent them from being placed behind his back.   Additionally, Defendants Morehouse and Shaffer deny kneeing or striking the Plaintiff.   Thus, should the jury find that the Plaintiff resisted, even by just merely tensing or stiffening his arms, and that Deputies Morehouse and Shaffer did not knee or strike the Plaintiff, they are entitled to qualified immunity.

   2.   **The Defendants are entitled to qualified immunity even if the jury finds that they kneed or struck the Plaintiff while he was resisting arrest because it was not objectively unreasonable and even if it was, the law was not clearly established.**

Where all three of the *Graham* factors support some use of force and the use of force is not clearly egregious, the officers will not be found to have used excessive force and will be entitled to qualified immunity.   *Yadon v. Hilton*, 2013 U.S. Dist. Lexis 5553, 2013 WL 160445, *5-*16 (D. Kansas 2013), aff'd, 2013 U.S. App. Lexis 11738, 2013 WL 2489935 (10th Cir. 2013).   In *Yadon*,

the court found that an officer that pulled the plaintiff out of his van and struggled to handcuff him did not use excessive force.  In that case, defendant officers were investigating a motor vehicle accident.  *Id*. at *5.  During the officers' investigation, the plaintiff was yelling and flailing his arms in the vicinity of the officers.  *Id*.  The last time he acted in a disruptive fashion, one of the officers told him he was under arrest for disorderly conduct and directed the plaintiff to put his hands behind his back.  *Id*. at *6.

The plaintiff ignored the officer's request and instead hurried to his van.  *Id*.  The officer yelled at him to stop.  *Id.*  The plaintiff ignored the officer's request and attempted to get into his van.  *Id*.  The officer pulled plaintiff's arm (or neck according to the plaintiff) and tried to pull him away from the van.  *Id*.  Plaintiff yelled, swung his arms around and struggled for several minutes before being handcuffed.  *Id*.  During this time, a second officer took the plaintiff to the ground.  *Id*. While the first and second officer attempted to hold the plaintiff on the ground so a third officer could handcuff him, the plaintiff pulled his arm away several times.  *Id*.  He continued to struggle throughout this process and complained that he could not breathe.  *Id*.

As a result of the arrest, plaintiff suffered contusions and abrasions to his face and arms, a sprained right elbow, and two nondisplaced rib fractures.  *Id*. at *7.  Plaintiff was 6'1" or 6'2" and weighed 194 pounds on the day of the incident.  *Id*.

The court applied the *Graham* factors to determine whether the officers violated plaintiff's constitutional rights.  The first *Graham* factor only slightly justified the use of force, as plaintiff was being arrested for a misdemeanor.  *Id*. at *11.  The second *Graham* factor only modestly supported the use of force, as there was no evidence that the plaintiff posed an immediate threat to the safety of defendants or others except to the extent that he was angry and flailed his arms.  *Id*.  However, the third *Graham* factor strongly supported the use of force because the plaintiff actively resisted

arrest.  *Id.*  The court concluded that where all three factors supported some use of force and the use of force was not clearly egregious, the officers did not use excessive force and were entitled to qualified immunity.  *Id.* at *16.

Applying the *Graham* factors to the present case, the court should find that the Defendants are entitled to qualified immunity, as they did not violate the Plaintiff's right to be free from excessive force.  First, as in *Yadon*, the encounter with Corporal Murakami started as a relatively minor violation.  However, the situation quickly escalated when Plaintiff refused to provide Corporal Murakami with his license and registration and refused to exit his vehicle, which prompted her to place him under arrest for Resisting and Obstruction and call for a Code 3 assist.  Thus, the first factor weighs in favor of the use of force.

Under the second factor, as in *Yadon*, the Plaintiff's undisputed failure to obey Corporal Murakami's commands to get out of his running vehicle located on the Interstate posed an immediate threat to the safety of the officers.  The Plaintiff could have easily and quickly fled the scene, putting the lives of Corporal Murakami, Deputy Morehouse, his passengers, and other motorists and the general public in danger.  Corporal Murakami and Deputy Morehouse were faced with an uncertain, tense and dangerous proposition as they had approached an uncooperative suspect in his vehicle.  *See e.g. Ashbrook v. Boudinot*, 2007 U.S. Dist. Lexis 88627, *2-*18 (S.D. Ohio 2007).  Corporal Murakami and Deputy Morehouse did not know whether the Plaintiff or his passengers had weapons.  *Id.*  Due to Plaintiff's failure to comply with Corporal Murakami's repeated requests, they were forced to physically remove him from the vehicle and take him to the ground.  This was reasonable, and thus, the second *Graham* factor likewise weighed in favor of used force.

Third, Plaintiff actively resisted arrest, as he was uncooperative and struggled with Defendants after he was pulled from his vehicle and taken to the ground.  Just like the struggle that occurred in *Yadon*, additional officers arrived on scene to assist with the arrest of the Plaintiff.  Judging these actions from the perspective of a reasonable officer on the scene, it was reasonable to conclude that the Plaintiff was resisting arrest or attempting to evade arrest by flight.  Therefore, the third *Graham* factor strongly supported the use of force.  Accordingly, the Defendants' actions were objectively reasonable and within the bounds of the Fourth Amendment.

Even if the Defendants' actions could be found to be objectively unreasonable, the Defendants are still entitled to qualified immunity, as there is no existing precedent which would provide **clear notice** that their actions were unconstitutional under the circumstances.  In this case, the Court determined at Summary Judgment that the Plaintiff's right to be free from kneeing and strikes if he lay on the ground not resisting was clearly established, and the Court denied Defendants qualified immunity.  Because it was a Motion for summary Judgment, the Court was required to take the facts and inferences in the light most favorable to the Plaintiff.  In doing so, the Court was required to believe Plaintiff's statement that he was not resisting and that all of the Defendants kneed and struck him.

Now that this case is at the trial stage, the jury will act as the fact finder to determine whether the Plaintiff resisted arrest and whether all Defendants kneed and struck Plaintiff's right side—an allegation that seems impossible due to the location of the Defendants around the Plaintiff.  Should the jury determine that the Plaintiff resisted arrest and that Defendants Morehouse and/or Shaffer kneed or struck him, they are entitled to qualified immunity as the right was not clearly established.

Under these facts, this case is distinguishable from *Lalonde v. County of Riverside*, 204 F.3d

947 (9th Cir. 2000), the case relied upon by this Court to deny qualified immunity to these Defendants at the summary judgment phase.  The defendant deputies in that case responded to a noise complaint at plaintiff's apartment.  *Id*. at 951.  The defendants decided to arrest plaintiff for obstruction. *Id*.  Plaintiff resisted initially and struggled with the officers. *Id*. However, plaintiff stopped resisting after being knocked to the ground and doused with pepper spray. *Id*. After plaintiff had become compliant, one of the defendants put his knee in plaintiff's back, causing significant pain and injury. *Id*. The Circuit held that "if the extent of the injury to [plaintiff's] back is serious enough, a jury could conclude that [the arresting officer] used force in excess of what was reasonable…"  *Id*. at 959.  The Circuit held that plaintiff had the right to have the jury assess the evidence supporting his claim of excessive force.  *Id*.

Relying on *LaLonde*, this Court concluded that **if** Plaintiff was passive during the scrum, there was no governmental need to assault him.  Additionally, **if** Plaintiff was passive and posed no safety risk, the law was clearly established that the force alleged by Plaintiff was excessive. However, at the summary judgment stage, the Court did not evaluate whether the force used was reasonable if the Plaintiff resisted, nor whether Plaintiff's right to be free from such force, given his resistance, was clearly established.

Defendants contend that the force used was not excessive in light of the facts and circumstances known to the Defendants at that time.  As found by this Court, those facts and circumstances include:

- Defendants were responding the a Code 3 life-or-death call for assistance from Corporal Murakami and had no time to independently determine if the alert was legitimate;

- Defendants did not know the crime for which the Plaintiff had been arrested, but had to assume that Plaintiff posed a serious danger to the officers, and consequently they were entitled to

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 13

treat him aggressively;

- The Plaintiff was larger than them, protesting in a loud and angry voice, and had not been frisked for weapons.

Based on the facts and circumstances, if the jury finds that the Plaintiff resisted handcuffing, the force used was objectively reasonable.

Even if the jury finds that the force used was excessive, the law was not clearly established on December 26, 2011, and these Defendants were not on clear notice that such actions were unconstitutional. Based on the U.S. Supreme Court's direction in *Pauly*, liability cannot be imposed for a constitutional violation unless existing precedent had been identified that provided **clear notice** the conduct was unconstitutional under the circumstances.

*LaLonde* did not provide the Defendants with clear notice that their conduct was unconstitutional under the circumstances. In *LaLonde*, the defendants knew they were there based upon a noise complaint and knew they were arresting plaintiff for obstruction. Additionally, the knee in the plaintiff's back happened only after the plaintiff had been doused in pepper spray and was not resisting.

The present case is different because Defendants Morehouse and Shaffer responded to a Code 3 life-or-death alert on the freeway at approximately 3:30 a.m. and they did not know the crime for which the Plaintiff was arrested. More importantly, the Plaintiff in this case was not pepper sprayed and continued to resist until he was placed in handcuffs.

The Court also relied on *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) in its decision on summary judgment. As with *LaLonde*, if the jury finds that the Plaintiff continued to resist during the scrum, *Santos v. Gates* did not put these Defendants on clear notice that their actions were unconstitutional.

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 14

In *Santos*, the defendants admitted that the plaintiff did not pose a significant or immediate safety risk, and even described the plaintiff as passive. Additionally, there was no evidence that he actively resisted arrest. Under all accounts of the events, plaintiff did not struggle with the officers but in fact evinced a willingness to submit to their assertions of authority. Therefore, *Santos* cannot be relied upon to clearly establish that the Defendants conduct in this case was unconstitutional.

The facts of *LaLonde* and *Santos* are not similar enough to the facts of this case to clearly establish and put every reasonable officer on notice that their actions in this case were excessive and unconstitutional. To do so would require a finding that these Defendants were plainly incompetent. Such a finding is simply not supported by the evidence. These Defendants have found no other case from the Ninth Circuit that is sufficiently similar to meet the exacting standard set forth in *Pauly* and *S.B.* Thus, to the extent a jury finds Defendants' actions unreasonable, Defendants were not on notice that their actions could be considered unconstitutional, given the Plaintiff's resistance.

**B.    The Plaintiff has the burden to prove that each individual Defendant's actions amounted to a constitutional violation.**

The Plaintiff alleged in his Second Amended Complaint that each of the Defendants' actions amounted to excessive force. The Plaintiff did not allege a theory of liability based upon integral participation and did not put the Defendants or the Court on notice of such theory until he filed his Motion in Limine to Establish Complicit Liability [Dkt. 154] on February 23, 2018. These Defendants filed their Response to Plaintiff's Motion to Establish Complicity Liability on March 15, 2018 [Dkt. 166]. These Defendants maintain the position taken in that Response and incorporate it herein as if set forth in full.

**C.    The Plaintiff did not suffer any injuries.**

The Plaintiff has alleged that he suffered physical injuries to his body, most notably his right hip, as a result of the subject incident. However, the Plaintiff's medical records do not support his

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 15

allegation.  The Plaintiff's medical records from the Boise VA indicate that he had pre-existing back and hip pain.  Specifically, on December 7, 2011, (19 days before the subject incident) Dr. Barclay referred the Plaintiff for a Rehab Medicine Consult for evaluation and treatment of Plaintiff's degenerative bilateral hip pain.  The Plaintiff was seen pursuant to the December 7, 2011 request for the rehab medicine consult on January 12, 2012.  Although this appointment occurred after the subject incident, it had been requested prior to the incident due to the Plaintiff's pre-existing conditions.  At the consult, Dr. Stewart recommended hip injections and the Plaintiff stated that he would think about it.  There are no records indicating that the Plaintiff ever underwent the recommended hip injections.

The Plaintiff then was not seen for six months.  His next date of treatment was July 12, 2012, when he was seen for an x-ray of the pelvis and bi-lateral hips.  Degenerative changes were noted at both hips, right greater than left, as well as lumbar spine degenerative changes.  There were no fractures or acute bony pathology and the findings appeared similar to the Plaintiff's prior examination which occurred on September 14, 2011.  Dr. Barclay saw him on July 20, 2012, and referred him for a physical therapy consult.  The Plaintiff was seen in physical therapy two times in August, 2012.  The Plaintiff was not seen again for any treatment until July 31, 2013.

There is no indication in the records that any of this treatment or any other subsequent treatment was the result of the subject incident.  Even if the treatment in July and August of 2012 could somehow be related, the Plaintiff then discontinued any treatment for a year.

Additionally, the Defendants moved in their First Motion in Limine to exclude the Plaintiff from calling any expert medical witnesses as he failed to disclose any by the deadline.  Even in his late disclosures, the Plaintiff has not identified any expert that will opine that the subject incident caused the Plaintiff to suffer any injuries.  Likewise, as to any other damages, the Defendants

moved in their Second Motion in Limine to exclude the Plaintiff from introducing any evidence of lost wages/loss of income, or damages with regard to intimacy issues.  The Defendants hereby incorporate the positions and arguments in their First and Second Motions in Limine as if set forth in full herein.

**D.      Use of a deposition under F.R.C.P 32(a)**

As of today's date, no party has indicated that they intend to use a deposition pursuant to F.R.C.P. 32(a).  To the extent any party wishes to do so, other than for impeachment purposes, these Defendants hereby object.

**E.      Objections to Plaintiff's Exhibits**

As of today's date, the only exhibits identified by the Plaintiff are Corporal Murakami's dash recording/video; telephone video of Alandra Bell and Siara Bell of the incident; VA Medical records; perhaps audio/video recordings made by other officers.  *See* Planitiff's Answers to Joint Set of Interrogatories, Requests for Production, and Requests for Admission Answer to Interrogatory 9.

Defendants object to the telephone video of Siara Bell as it has never been produced.  In fact, she testified at her deposition that she does not have it and she never saved it.  Defendants object to any of the Plaintiff's VA records for treatment after August of 2013 as they were not timely provided.  Objection to the admission of those records has been briefed in Defendants' First Motion in Limine and incorporated in full herein.

DATED this 23rd day of March, 2018.

**JAN M. BENNETTS**
Ada County Prosecuting Attorney


By:      /s/_____
Erica J. White
Deputy Prosecuting Attorney

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 17

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on this 23rd day of March, 2018, I served a true and correct copy of the foregoing DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF to the following persons by the following method:

| | | |
|---|---|---|
| Richard L. Harris | _____ | Hand Delivery |
| 1023 Arthur Street | _____ | U.S. Mail |
| Caldwell, Idaho 83605 | _X_ | Electronic Filing |
| | _____ | Facsimile |

| | | |
|---|---|---|
| Scott B. Muir | _____ | Hand Delivery |
| Kelly K. Fleming | _____ | U.S. Mail |
| Boise City Attorney's Office | _X_ | Electronic Filing |
| 150 North Capitol Blvd. | _____ | Facsimile |
| P. O. Box 500 | | |
| Boise, Idaho 83701-0500 | | |

_____/s/_____

Candace McCall, Legal Assistant

DEFENDANTS DALE MOREHOUSE AND NICK SHAFFER'S TRIAL BRIEF – PAGE 18