**RICHARD L. HARRIS**
1023 Arthur Street
Caaldwell, Idaho 83605
Telephone 208-459-1588
Cell    208-250-3688
Fax  208-454-9348
ISB # 1387
attyrlh@aol.com

Attorney for Plaintiff

IN THE UNITED STATE DISTRI9CT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEE ARTHUR RICE, II,  ) | CASE NO. 1:13-CV-00441-BLW |
| Plaintiff,  ) | TRIAL BRIEF |
| vs.  ) | |
| DALE MOREHOUSE, JEFFREY A. ) HILL, MARK ABERCROMBIE, AND ) NICK SHAFFER.  ) | |
| Defendants.  ) | |

Plaintiff does hereby submit this Trial Brief in addressing certain evidentiary issues that may arise at the trial of this matter.

### PUNITIVE DAMAGES

The Defendants have asserted that the issue of punitive damages should not be submitted to the jury. Taking the defendants argument at its strongest point based on *Kolstad v. American Dental Assn.*, 527 U.S. 526 (1999), and *Smith v. Wade*, 461 U.S. 30 (1983), and *Iocabucci v. Boulder*, 193 F.3d 14 (1st Cir, 1999), it does not block an award of punitive damages.

Defendants argue that there can be no punitive damages unless officers are aware that they may be acting in a way that breaks the law, an "established" law. The defendants argue at page 9 that Morehouse and Shaffer's Memorandum in Support of their Second motion in Limine (Documents 155.1 in this case) that "Plaintiff has not set

Page | 1

forth any evidence that these Defendants acted in the face of a perceived risk that their actions would violate federal law."

First, it is way premature for the defendants to be arguing that plaintiff has not offered evidence when the trial has not even begun. Defendants are advancing arguments that would require this Court to step beyond its role as a gatekeeper on disputed questions of fact, particularly in light of the heavy presence in the Ninth Circuit of a court policy that disputed questions of fact as to excess force are particularly for the jury as fact finders.

But more importantly perhaps, defendants overlook the obvious risk to the officers running afoul of Idaho Code, 18-706 which provides:

> 18-706. UNNECESSARY ASSAULTS BY OFFICERS. Every public officer who, under color of authority, without lawful necessity, assaults or beats any person, is punishable by fine not exceeding $5,000 and imprisonment in the county jail not exceeding one (1) year.

The history of this case is as follows: As the officers in this case arrived on the scene in response to a Code 3 call that the originating officer now admits was error, they had to be aware of the existence of 18-706. They are charged with being aware of the law they enforce. Being aware of this law, they would of necessity have perceived a risk, i.e. the risk of using force in view of the question of "who" and "when" as they relate to the existence of "lawful necessity." Officers know that their conduct will be judged after the fact when it is too late to change the factors that led to the objectionable conduct. So, when they rush to a scene to help an officer who has initiated a desperate call for help, they do so with full awareness that after the fact they will be judged by someone's decision as to whether their use of force was a "lawful necessity." They must perceive the risk they are taking that whoever makes the decision as to lawful necessity will see it the same way the officer saw it in the heat of the moment.

Of course Plaintiff contends that there was no lawful necessity of the heavy handed beating to which he was subjected. Officer Murakami was on the passenger side of the vehicle demanding production of a driver's license and registration. Harmony Black was organizing the papers and just as she was ready to show them, Murakami moved away from her passenger side of the vehicle, walking to the driver's side where she became embroiled there in a discussion with the Plaintiff. At that point there was no

Page | 2

lawful necessity of upgrading the situation because Plaintiff was doing nothing to aggravate the situation and she had to see that Harmony was getting her papers she asked for.

This was after all a traffic stop for a "less than five second" blinker lane change; none of the officers on this call would testify that such a violation calls for a punishment that cripples the driver. Yet, that is the punishment that was meted out for his delaying getting out of the car. Common sense dictates the conclusion that they had to perceive the risk of rendering such treatment to a recalcitrant motorist in response to such a minor infraction.

Punitive damages are logically connected to cases involving charges of excess force exerted by law enforcement officers. One of the prime reasons for allowing punitive damages in any case is to deter repeat of the conduct. An award of punitive damages can go a long way toward warning the culprit of what will happen if he repeats such conduct.

In *O'Neill v. Krzeminski, Fiorillo and Connors*, 839F2.2d 9 (2nd Cir. 1988), the Second Circuit Court of Appeals affirmed an award of punitive damages in a case in which plaintiff was beaten by Krzeminski and Fiorillo. Connors watched without raising a finger to stop the unlawful act. In Connors presence, the other two officers struck Plaintiff three times "in rapid succession" on the face and head and dragged him across the floor holding on to his neck. At least one of the blows was with a blackjack. The court allowed the case of willful excess force against Connors go to the jury which returned a verdict of compensatory and punitive damages.

On appeal Connors argued that it was error even to subject him to the jury since he did not attack or even hit the plaintiff. But the Circuit Court said "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers" citing *Byrd v. Clark*, 713 F.2d 11002 (11th Cir. 1986), *Webb v. Hiykel*, 713 F.2d 405 )8th Cir. 1983), *Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982), *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982) cert. den. 459 U.S. 1171, *Byrd v. Brishke*, 466 f.2d 6 (7th Cir. 1972) and *Skorupski v. County of Suffolk*, 652 F. Supp. 690 (E.D. N.Y. 1987) all excess force cases.

The Court held that even though the first blows to the plaintiff were struck too fast for Connors to intervene, he could have done so when the others were dragging the plaintiff across the floor. The Court affirmed the punitive damage awards, holding that a "punitive award 'may be an integral part of the remedy in a civil rights action'" citing *Zarcone v. Perry*, 572 .2d at 52 and *Smith v. Wade*, 461 U.S. 30. The Court ruled that only if the amount of punitive damages shocked the conscience would it be reversed. It pointed out that here the plaintiff was still handcuffed when struck and dragged.

In the instant case, Rice was repeatedly kneed in the hip area where the hip was virtually destroyed, and he was pummeled around the upper body and head---all over a less than obvious traffic offense and a decision to call in a Code 3 which was an error by a stressed officer.

The Court pointed out that punitive damages had been approved in cases in which there was no physical harm done to the accused by beating, kicking, or even physical abuse.: citing *Hall v. Ochs*, 817 f.2d 920 and *Zarcone v. Perry*, supra.

The Court also affirmed the award of compensatory damages for pain and suffering though the plaintiff suffered no permanent physical disability, and for lost wages even though there was relatively little proof other than lessening of what he could earn in the future.

Applying the reasoning of the Court in *Krzemski* to the instant case: here Rice was tripped and while on the ground pummeled and kneed in front of Murakami and other officers involved in the case. There is ample evidence of the facts that even the non-kneeing officers did not intervene and stop the beating which was clearly unnecessary and a violation of Rice's rights.

As to lost wages, Rice will be able to demonstrate that he was just getting to the point of earning much bigger income from his many ideas of development of self help legal services as well as ideas for a huge community development program for restoration of the River Street historic area for black families in Boise, a project he had discussed with the mayor of Boise. Such evidence was allowed in *Smith* and *Zarcom*.

A multitude of Ninth Circuit cases have held that when a defendant has been found liable for compensatory damages the jury may also consider punitive damages In

Page | 4

fact, the Comments from the Committee on Model Jury Instructions, included with the publication of the model instructions said as follows:

> "As to Sec. 1983 claims, "[I]t is well-established that a ' jury may award punitive damages...either when a defendant's conduct was driven by evil motive or intent, or when it involves a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) In *Dang v. Cross*, the Ninth Circuit held this "statement of the law of punitive damages is incomplete, however. The standard for punitive damages under Sec. 1983 mirrors the standard for punitive damages under common law tort cases....[M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above provided by compensatory awards.'...Such acts are therefore all proper predicates for punitive damages under Sec. 1983." 442 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade*, 416 U.S. 30, 40 (1983)).

The *Dang* court held it was reversible error to decline to instruct that "oppressive acts" were an alternative basis for punitive damages in a Sec. 1983 case.

Similarly, punitive damages claims arising under state law are subject to state law standards for recovery which should be reflected in a modified jury instruction. See, e.g. *Coughlin v. Tailhook Ass'n,* 112 F.3d 1052, 1056 (9th Cir. 1997).

Whether punitive damages nee to be proved by a preponderance of the evidence or clear and convincing evidence also depends on the standards applicable to the underlying claim for relief. For example, several states in the Ninth Circuit require proof by clear and convincing evidence before punitive damages are awarded on a state law claim. On the other hand, a preponderance of the evidence standard has been upheld for punitive damages in certain federal claims. See e.g, *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (holding that a preponderance standard applied to punitive damages claim in a mritime case, citing *Pac. Mut. Life Ins, Co. v. Haslip*, 499 U.S. 1, 23 n. 11 (1991)).

If punitive damages are available and evidence of the defendant's financial condition is offered in support of such damages, a limiting instruction may be appropriate. See Instruction 1.11 (Evidence for Limited Purpose) and numbered paragraph (3) in Instruction 1.10 (What is not Evidence).

Regarding the degree of reprehensibility and punitive damages generally, see *Philip Morris USA v. Williams,* 549U.S. 346, 353-54 (2007), *BMW of N. Am., Inc. v. Gore,*517 U.S. 559 (1996), *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1 (1991); see also

Page | 5

*Morgan v. Woessner,* 997 F.2d 1244, 1256 (9th Cir. 1993) ("*Haslip* said that instructions should be fashioned to describe the proper purposes of punitive damages so that the jury understands that punitive damages are not to compensate plaintiff, but to punish the defendant and to deter the defendant and others from such conduct in the future.") See also *White v. Ford Motor Co.*, 500 F.3d 963 (9th Cir. 2007) (holding that trial court's failure to give a "harm to nonparties" instruction violated due process and was reversible error after *Williams*. Bracketed language in the fourth paragraph oof the instruction addresses this requirement when evidence concerning harm to nonparties is admitted on the issue of reprehesibility.

This committee comment follows the Model Instruction for punitive damages 5.2 in the Manual of Model Instruction:

### 5.5 PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purpose of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a [preponderance of the evidence] [clear and convincing evidence] that punitive damages should be awarded and , if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of the perceived risk that its actions will violate the plaintiffs rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should no reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, [including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant  for harm to anyon other than the plaintiff in this case].

Page | 6

[In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.]

### DECLARATION OF ALVIN FLANE WALKER AND DR. MARK COOK AS EXPERT WITNESSES

Defendant completely skew the issue of expert witnesses and testimony in challenging Alvin Flane Walker and Dr,. Mark Cook, MD, both of whom more than qualify as experts under the Federal Rules of Evidence.

Rule 702 specifies that a witness may qualify as an expert if his or her specialized knowledge, skill, experience, training and education will "help the trier of fact to understand the evidence or to determine a fact in issue", and if "the testimony is based upon sufficient facts or data" and if "the testimony is the product of reliable principles and methods" and if the expert has "reliably applied the principles and methods to the facts of the case."

As to Alvin Flane Walker first, it is hardly fathomable that the defendants challenge the man's position as an expert in the martial arts and acupuncture, and it is in those fields that he is expert and is from the standpoint of those fields and Rice's former position in them that Walker testifies.

Alvin Flane Walker more than qualifies to testify as an expert to provide an opinion as to the functioning of the human anatomy, damage to the human anatomy and causes of damage to the human anatomy because of his vast experience and expertise and training in Oriental Medicine and acupuncture.

He trained for ten years as an apprentice under Mastuetsu, Oriental Medical Doctor in Los Angeles, from 1969 to 1979; he also trained under Won Hop Loong Chuan Gung Fu. He began training in martial arts under his father until 1969 when he accepted as apprentice by Mastuetsu.

He is licensed to practice acupuncture in four states: Colorado, Texas, Florida, and Alaska as well as in Thailand, Austrailia, Canada, and Beijing, China. He is Grand Master in Wop Hop Loong Chuan, Chinese Gung Fu and he teaches at 36 schools within the United States and at 5 schools in Europe, the primary school being in Italy.

He holds 9th degree balck belt in Korean Karate and is not anxious to reach 10th degree level because that is reserved for 9th degrees who die and is award the 10th degree posthumous. He hods Sagawa Karafu Karate 5th degree black bel, Japanese and Chinese Kung Fu and is a Master instructor in Wu Tai Chi Chuen and Grand Master in Tsong Quo Cheun, and Grand Master in ShotoKan Karate.

A licensed acupuncturist with all the training and teaching skills possessed by Flane Walker more than qualifies him to testify as to features of, functions of, and casual relationships to, the human body. The rationale behind that statement is that acupuncturists must know the anatomy. The Gale Encyclopedia of Medicine, edited by Lannie J. Fundukian and published by Gale Engage Learning, Detroit, New York, San Francisco, New Haven, Waterville, Maine and London has full coverage of acupuncture, its history and its acceptance in the world of medicine and science.

The coverage of acupuncture (at pages 44 et se, Vol. 1) shows clearly that it is critical to know the human anatomy intricately in great detail in order to perform acupuncture. The article points out that acupuncture is "one of the main forms of treatment in Oriental Medicine.

Walker is co-author along with Richard Bauer of two books on acupuncture: *The Ancient Art of Life and Death*, published by Paladian Press, in 2000, and the *Book of Dim Mak*, a Paladian Press best seller. The book describes how to use acupuncture points with location and physiology to cause damage reactions with time delay over 1 to 30 diurnal cycles, and how to stop damage with herbs and acupuncture.

There are thousands of documented medical doctors in the United States who now use acupuncture and certify its usefulness and its scientific basis. Obviously the AMA does not accept or recognize acupuncture, but it is an accepted American practice now.

Dr. Mark Cook is a medical doctor duly licensed to practice medicine in the the State of California where he has his practice. In this case he has reviewed x-rays involving Plaintiff's hip both prior to the incident here and after, has reviewed the VA medical records pertaining to Plaintiff, has personally examined the Plaintiff and is qualified to render opinions as to his injuries, causation and prognosis.

Respectfully Submitted this __23__ day of March 2018.

_____
Richard L. Harris
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on the ___23___ day of March, 2018 to following by the means indicated:

| | | |
|---|---|---|
| Scott Muir | _____ | U.S. Mail |
| Boise City Attorney's Office | ___✓___ | Personal Delivery |
| P.O. Box 500 | ___✓___ | Electronic filing |
| Boise, Id. 83701-0500 | | smuirAcityofboise.org |
| | _____ | Facsimile (208) 384-4454 |
| | | |
| Catherine Freeman | _____ | U.S. Mail |
| Prosecuting Attorney's Office | _____ | Personal Delivery |
| 200 W. Front Street, Room 3191 | ___✓___ | Electronic Filing |
| Boise, Id. 83702 | | civilpafiles@adaweb.net |
| | _____ | Facsimile (208) 287-7719 |

_____
Richard L. Harris

Page | 10