# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEE ARTHUR RICE II,<br><br>            Plaintiff,<br><br>v.<br><br>CITY OF BOISE CITY; COUNTY OF ADA; CITY OF MERIDIAN; IDAHO STATE POLICE; STATE OF IDAHO; JANET MURAKAMI; and JOHN DOES 1-20,<br><br>            Defendants. | Case No. 1:13-cv-00441-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it several pre-trial motions filed by both parties. The motions are fully briefed and at issue. The Court will explain its ruling on each motion below.

## LITIGATION BACKGROUND

In 2011, Idaho State Trooper Janet Murakami pulled plaintiff Lee Arthur Rice over for failing to signal a lane change. When she asked him to turn over his driver's license, he refused. When she informed him he was under arrest, he refused to get out of the car. As Rice remained seated in his car, Officer Murakami called in a Code 3 alarm, signally that she was exposed to a life or death situation. Immediately, seventeen officers responded. Predictably, they used aggressive force to pull Rice from the car, push him to

the ground, and place him in handcuffs. During this time – referred to as the scrum – several officers were involved in restraining Rice while he was on the ground. Rice alleges that even though he was not resisting arrest, the officers struck him, kneed him in the back, and wrenched his arms and shoulders, causing permanent injury. The officers dispute that account, and claim Rice was resisting arrest.

Rice originally sued Officer Murikami and the other officers who responded to her call for help. Decisions by this Court and the Ninth Circuit establish that: (1) the traffic stop was lawful; (2) Officer Murikami was entitled to qualified immunity for requiring Rice to surrender his license; (3) the arrest of Rice did not violate his Fourth Amendment rights; (4) the forcible removal of Rice from his car did not constitute excessive force; (4) the "take-down" of Rice by Officers Morehouse and Shaffer did not constitute excessive force; and (5) Officer Murikami is entitled to qualified immunity and was dismissed as a defendant,

The only remaining issue is whether the four remaining defendants – Officers Abercrombie, Hill, Morehouse and Shaffer – used excessive force on Rice while restraining and handcuffing him during the scrum. Trial is set for April 23, 2018. With that background, the Court will turn to the pending pre-trial motions.

## ANALYSIS

### Rice's Motion in Limine re Witness Murikami

Rice intends to call Officer Murikami as a witness, and asks the Court to deem her a hostile witness and allow leading questions. Rule of Evidence 611(c)(2) allows leading questions "when a party calls a hostile witness . . . or a witness identified with an adverse

party." Officer Murakami was a defendant in this case but was dismissed because she had qualified immunity. She is certainly a "witness identified with an adverse party" and hence Rice will be allowed to ask her leading questions under Rule 611(c)(2). The motion shall be granted.

## Defendants' Second Motion in Limine

Defendants seek to exclude several items of evidence. The Court will consider each below.[1]

## Traffic Stop

Defendants seek to preclude Rice from arguing that the traffic stop was unlawful. Because the Court has determined as a matter of law that the traffic stop was reasonable, this issue is resolved and will not be presented to the jury. The motion shall be granted to preclude any argument that the traffic stop was unlawful. Rice may still present evidence explaining in detail how the traffic stop occurred, and its aftermath, but is precluded from arguing or suggesting that the traffic stop itself was unlawful.

## Criminal Charges

Defendants seek to exclude any evidence that the criminal charges filed against Rice for his conduct during the traffic stop were later dismissed. Defendants argue that this evidence should be excluded "because this Court found that Trooper Murakami's traffic stop was proper as a matter of law." *See Brief (Dkt. No. 155-1)* at p. 2. The Court

---

[1] Rice filed his response brief late and has offered no good cause to excuse the late filing. The Court will therefore deny his motion for extension of time to file the brief late. But in the interest of a full resolution of the issues, the Court will consider all of Rice's arguments in resolving the issues raised by the motion.

**Memorandum Decision & Order – page 3**

disagrees; evidence of the resolution of the criminal charges is necessary to give the jury a complete factual account. The jury will certainly hear evidence that Rice was arrested. To justify that arrest, the jury will also certainly hear evidence that he was charged with certain criminal offenses. To then ignore the resolution of those criminal charges would leave a large and conspicuous gap in the factual record. This portion of the motion shall be denied.

**Surrendering License, Arrest, and Take-Down**

Defendants seek to preclude any argument from Rice that he was not required to hand his driver's license to Officer Murikami, that his arrest was unlawful, and that the "take-down" by Officers Morehouse and Shaffer constituted excessive force. With regard to the arrest and take-down, the motion will be granted – the Court has held as a matter of law that the arrest was lawful and that the take-down did not constitute excessive force, and these issues cannot be reargued to the jury. Nevertheless, Rice may establish all the factual details of his arrest and take-down without arguing that they constitute Fourth Amendment violations or excessive force.

The Court turns next to the license surrender issue. In its earlier decision, the Court found that Idaho Code § 49-316 requires a driver to "surrender" his driver's license to a police officer upon demand. *See Memorandum Decision (Dkt. No. 86).* The Court discussed the holding in *Hiibel v. Sixth Judicial District of Nevada,* 542 U.S. 177, 186 (2004) that a state law requiring a driver to identify himself upon demand by the police – at least where there is no evidence that this would incriminate the person – does not run afoul of the Fourth or Fifth Amendments. In that case, the driver "refused to identify

**Memorandum Decision & Order – page 4**

himself only because he thought his name was none of the officer's business." *Id.* at 190. There was no "articulated real and appreciable fear that his name would be used to incriminate him." *Id.* Accordingly, the Court rejected his Fifth Amendment objection to being arrested and convicted for refusing to identify himself.

In this case, the Court found some evidence that Rice's license had been suspended, which at least raised a question whether he would incriminate himself by surrendering his license to Officer Murikami. The Court held that it need not resolve that issue because Officer Murikami was at least entitled to qualified immunity for following the Idaho Code provisions requiring surrender.

With this background, the Court turns to defendants' motion to preclude any argument that Rice was not required to surrender his license to Officer Murikami. Rice is entitled to explain his response to Officer Murikami's demand for his license. He is not entitled to expound upon the law. The Court will have to wait until trial to see how this evidence is introduced to make a final ruling. But to give counsel some guidance, the Court will generally allow Rice to explain why he responded the way he did to Officer Murikami but will not allow any argument based on the law. It may be necessary for the Court to explain the law to the jury through jury instructions but that decision must await trial.

**Bailment & Conversion**

Defendants ask to exclude any evidence of bailment or conversion, and Rice agrees that he will not pursue damages for these matters. The motion shall be granted to exclude any evidence of bailment or conversion.

**Memorandum Decision & Order – page 5**

**Lost Wages**

Defendants seek to exclude any evidence of lost wages on the ground that Rice has failed to produce any evidence of lost wages in response to discovery requests. Rice does not rebut this argument by showing what discovery on lost wages he did provide to defendants. The Court must therefore assume that Rice has failed to produce any evidence of lost wages in response to discovery requests. That failure bars Rice from offering at trial any evidence of lost wages.

**Medical Expenses**

Defendants seek to exclude any claim for damages based on medical expenses. Rice agrees that his expenses were all covered by the Veterans Administration and will not be seeking damages for medical expenses. The motion shall be granted to exclude any evidence of medical expenses.

**Insurance, Video & Settlement**

Defendants seek to exclude any evidence of (1) insurance, (2) a video entitled "Beat Down on I84"; and (3) a settlement with Tony Ford. Rice agrees to each and so the motion will be granted to exclude any evidence of these three items.

**Loss of Consortium**

Defendants seek to exclude any evidence that Rice suffered a loss of consortium or a loss of intimacy, on the ground that Rice was not married at the time of the incident, and has not been married since that time. Moreover, Rice has failed to respond to discovery requests with anything to support these claims. When asked at his deposition how his injuries affected consortium or intimacy, Rice answered that he did not know.

*See Rice Deposition (Dkt. No. 155-2)* at pp. 72-73.  Finally, Rice has failed to respond in his briefing to this aspect of the defendants' motion in limine.  For all these reasons, the Court will grant this portion of the motion in limine and exclude any evidence of a loss of consortium or loss of intimacy.

**Disability**

Defendants seek to exclude any evidence that Rice has been adjudged disabled by the Social Security Administration.  In response to discovery requests, Rice never provided any explanation for that finding, and never provided any explanation from the Social Security Administration.  In the absence of any evidence linking the finding of disability to the injuries he alleges were caused by defendants, the finding of disability is irrelevant.  Thus, the Court will grant the motion to exclude any evidence that the Social Security Administration has declared Rice disabled.

**Testimony From Lay Witnesses Regarding Diagnosis, Causation & Prognosis**

Defendants seek to exclude any lay witnesses, including Rice himself, from testifying as to their opinions regarding the cause of Rice's alleged injuries, the reasonableness and necessity of his medical care, and his long-term prognosis and limitations.

A lay witness may testify in the form of an opinion if it is "rationally based on the witness's perception"; "helpful to clearly understanding the witness's testimony or determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701.  Additionally, expert

testimony is not required where special expertise is not required to enable a jury to make a causal inference. *Claar v. Burlington N. R.R Co.,* 29 F.3d 499, 504 (9th Cir. 1994).

The testimony that Rice himself may give "would include what [he] felt and experienced during and following the incident, what he did in response to those physical or emotional symptoms, what he communicated to his doctors, how the injuries impacted his life, and any treatment he personally observed." *See Walker v. City of Renton,* 2013 WL 12121084 at *1 (W.D.Wash 2013). Additionally, any other lay witnesses who observed Rice (and who has been disclosed as percipient witnesses) may also provide testimony "about observations of [Rice's] condition and how it has affected his activities." *Id.* However, no lay witness, including Rice, can testify "with respect to diagnosis, prognosis, medical opinions or medical inferences because those opinions require specialized knowledge." *Id.*

In other words, Rice may testify (for example) that his shoulder was hurt during the scrum and is painful, but he cannot testify that his pain is caused by a torn rotator cuff, because that diagnosis requires "specialized knowledge" and is hence outside the testimony allowed under Rule 701. To be more specific, Rice has alleged that he suffers a painful hip because his hip was "virtually destroyed" in the scrum. *See Trial Brief (Dkt. No. 186)* at p. 4. While Rice can testify that his hip is painful, he cannot testify that it was "virtually destroyed" in the scrum because that testimony requires the specialized knowledge of an expert.

Defendants also seek to exclude any lay testimony about a prognosis for how long Rice's pain and suffering might last. While Rice can testify about his suffering, he

**Memorandum Decision & Order – page 8**

cannot speculate about how long that suffering might last because any prognosis that estimates the duration of an injury is a medical opinion that again requires specialized knowledge. *See Clark v. Thomas,* 2014 WL 2573738 at *7 (D. Nev. 2014) (holding that "Rule 701 prevents [plaintiff] from personally testifying about – or calling lay witnesses to testify about – any medical diagnosis or prognosis . . . [such as] how long his suffering is likely to last").

In ruling on this aspect of the motion in limine, the Court has given guidance on what is, and is not, admissible. Accordingly, the Court will grant in part and deny in part this aspect of the motion in limine, consistent with this discussion.

**Car Passengers' Testimony of Events After Rice was Removed from the Car**

Defendants seek to exclude testimony from three passengers in the car (Harmony Black, Alandra Bell, and Siara Bell) about what happened to Rice after he was removed from the car. Defendants argue that each of the three passengers testified that they could not see Rice once he was removed from the car, and thus cannot testify to anything after his removal. It is true that all three testified that they largely lost sight of Rice after he was removed from the car, but Siara Bell testified that "[t]hey [the officers] were on [Rice] for a long time" and Alandra Bell testified that she could hear Rice "yelling" during the scrum. *See Bell Deposition (Dkt. No. 155-2)* at p. 21. Harmony Black testified that at one point, "I got more to my feet. I could see him on the ground. I could see all these – there were so many cops, I started counting." *See Black Deposition (Dkt. No. 155-2)* at p. 57. Thus, it is inaccurate to say that the passengers saw or perceived

nothing after Rice was removed from the car. Because that was the basis for this motion, it must be denied.

**Car Passengers' Testimony that Officers Pushed Them.**

Defendants seek to exclude any evidence that the officers pushed the three passengers back into the car. Defendants argue that the three passengers have no claim in this case, and that the officers' treatment of them is irrelevant to Rice's claims.

Harmony Black's testimony is representative of the testimony that defendants seek to exclude. Black testified that "[a]s I tried to stand up out of the car, the female officer threw me back into the car and hit my head against the door frame." *See Black Deposition, supra* at p. 57. The officers then asked her to get out of the car, and she stepped out and started counting police officers, at which time an officer "threw me back in the car again." *Id.*

What the passengers observed, and their ability to observe, is certainly relevant to explain the full context of events that evening. The passengers did not see much, and they are entitled to explain why their view was limited, as it is relevant to their credibility as witnesses. Thus, this testimony satisfies the test for relevance under Rule 401. The next question is whether, under Rule 403, its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. It is true that the three passengers have no claim for being pushed around, but that can be made clear in the jury instructions, mitigating any possible confusion or prejudice. At the same time, the evidence's probative value is quite high. The Court cannot find that the evidence should be excluded under Rule 403.

**Memorandum Decision & Order – page 10**

**Punitive Damages**

Defendants seek to exclude any evidence of punitive damages on the ground that the record contains no evidence that the defendants acted with an evil motive or with reckless or callous indifference. However, at this stage of the proceedings, on the eve of trial, the Court cannot grant a summary judgment on punitive damages. The defendants may properly raise this issue at the close of Rice's case-in-chief, at which time the Court will evaluate the evidence and testimony admitted and determine if the punitive damage claim will go to the jury. This portion of the motion shall be denied.

**Expert Witnesses**

The Court has, in an earlier decision, barred Rice from calling any expert witnesses. Thus, this issue, raised in the Second Motion in Limine, is moot.

**Conclusion re Defendants' Second Motion in Limine**

To summarize the discussion above on defendants' second motion in limine, the Court will exclude the following evidence and preclude argument on the following: (1) the unlawfulness of the traffic stop, Rice's arrest, and take-down; (2) any argument on the legality of an officer demanding surrender of a license; (3) bailment and conversion; (4) lost wages; (5) medical expenses; (6) insurance, video entitled "Beat Down on I84" and settlement with Tony Ford; (7) loss of consortium and loss of intimacy; (8) Rice's disability; (9) testimony from lay witnesses regarding medical diagnosis and prognosis.

The Court will deny the motion as to the following: (1) resolution of Rice's criminal charges growing out of the traffic stop; (2) passengers' testimony regarding events occurring after Rice was removed from the car and their being pushed back by the

**Memorandum Decision & Order – page 11**

officers; (3) Rice's explanation for his response to Officer Murikami's demand that he surrender his license; and (4) punitive damages.

## Rice's Motion in Limine re Integral Participation

There are four officers remaining in this case as defendants. Rice has alleged throughout the case that each of these officers used excessive force on him during the scrum, but has had difficulty identifying who did what. To address this difficulty of proof, Rice filed a motion in limine seeking a court ruling that "each defendant was an integral participant."

Generally, "[a] plaintiff must show that an officer personally participated in the alleged violation of the plaintiff's constitutional rights." *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002). The doctrine of integral participation "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). "Integral participation requires some fundamental involvement in the conduct that allegedly caused the [constitutional] violation." *Monteilh v. Cty. of L.A.,* 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011). Officers are fundamentally involved when they "provide some affirmative physical support at the scene of the alleged violation" and "are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Id.*

The defendants argue that Rice cannot apply the doctrine of integral participation in this case because he never alleged it in his complaint. Defendants cite in support the case of *Ibarra v. Snohomish*, 2017 WL 1210061, *5-*6 (W.D. Washington 2017). In

**Memorandum Decision & Order – page 12**

that case, plaintiff Ibarra alleged that two police officers used excessive force against him. Ibarra waited until the summary judgment stage to use the doctrine of integral participation to tag the two defendant officers with the acts of an unidentified third officer, who also allegedly beat Ibarra. The two defendant officers had no opportunity during discovery to address the actions of this unidentified third officer, and the court refused to allow Ibarra to interject this theory into the case at that late date. *Id.* at *6 n.8 (reasoning that "there is no indication that Ibarra pursued discovery on this theory").

This case is different. Here, Rice is not attempting late in the case to tag the four officers with the actions of others. Instead, Rice is claiming that the four officers either administered the beating themselves or had some fundamental involvement – were integral participants – in the beating. While Rice did not expressly plead the doctrine of integral participation, the role of each officer – that is, whether that officer was beating Rice or holding him down – has been an issue throughout the case, unlike *Ibarra* where the role of the third unidentified officer had never been an issue in discovery. For this reason, the Court cannot categorically reject the doctrine of integral participation for Rice's failure to plead it in his complaint.

At the same time, the Court cannot grant Rice's motion, which is essentially a motion for summary judgment. The Court will therefore deny the motion and determine after the evidence is submitted whether the doctrine of integral participation applies to this case.

### **Rice's Motion in Limine re Prior Conviction**

Rice seeks to exclude any evidence of his prior conviction on drug charges. In 2001, a jury convicted Rice of conspiring to distribute controlled substances and maintaining a place for the purpose of distributing controlled substances. He was sentenced to 84 months in prison, *see Judgment (Dkt. No. 170-1),* and was released from prison on August 12, 2008. *See Freeman Affidavit (Dkt. No. 170-1)* at ¶ 4. The Indictment states that Rice operated businesses in Boise, including a kick boxing gym, that were used to distribute illegal drugs and hold Rave parties. *Id.*

Evidence Rule 609 allows admission of a felony to impeach a witness if it passes muster under Rule 403.[2] If a party's felony conviction is otherwise relevant, it may be admissible even if that party does not testify – again, subject to the limits of Rule 403. In this case the probative value of the conviction is not substantially outweighed by the prejudicial effect. During his deposition, Rice claimed that his injuries have prevented him from opening a gym, and he appears to be claiming this restriction as an element of damage. Obviously, his prior felony record has relevance to his inability to open a gym, and he admits as such:

Q. And then when you were released from prison in 2009, did you take any steps to reopen your gym?

A. Yes.

Q. And what were those steps?

---

[2] Rule 609 has a special rule "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Rice was released from confinement on August 12, 2008 – a date less than 10 years ago – and so this provision of Rule 609 does not apply.

> A. Well, . . . trying to find – secure financing to open a gym.
>
> Q. And were you able to do that?
>
> A. No. It's difficult when you're a felon to do anything.

*See Rice Deposition (Dkt. No. 137-8) at pp. 73-74.*

While there is always the danger of prejudice when a prior conviction is introduced, the probative value of Rice's drug convictions is so great that it cannot be found to be substantially outweighed by this prejudicial effect, and hence the convictions cannot be excluded under Rule 403.

Rice was also arrested at the federal building in 2011 although his charges were later dismissed. During his deposition, Rice testified that he was pulled out of his car by officers, injuring his back, hip, and shoulder. *Id.* at p. 23. Given the similarity between those injuries and the injuries alleged in this case, the incident is clearly relevant. Moreover, the incident has a high probative value that cannot be found to be substantially outweighed by its prejudicial effect under Rule 403.

For these reasons, the Court will deny Rice's motion in limine seeking to exclude his prior conviction for drug charges and the 2011 incident at the federal building.

## **Rice's First Motion for Reconsideration**

On March 23, 2018, this Court issued a decision granting defendants' motion in limine to exclude all expert testimony from Rice on the ground that he had failed to comply with the deadlines for filing expert reports. More specifically, the Court found that Rice had been given an opportunity back in 2014 to file a motion to extend the expert disclosure deadline but failed to do so, and that the deadline had long since expired.

**Memorandum Decision & Order – page 15**

Rice now asks the Court to reconsider that decision on the ground that when the Court continued the trial date from February 12, 2018, to April 23, 2018, it stated – in a Docket Entry Order – that "[a]ll pretrial deadlines are vacated and will be reset by agreement of counsel, to be reviewed and approved by the Court." Rice is apparently arguing that this Docket Entry Order – filed about three months prior to the new trial date – reopened the expert disclosure deadline. It did not. It merely reset the deadlines for trial briefs, jury instructions, and the like. Indeed, Rice's own motion – on which the Docket Entry Order was based – only asked for relief from the deadlines for witness disclosures, trial exhibits, motions in limine, trial briefs, and some discovery. It did not ask for relief from the expert disclosure deadlines. The Stipulation that resulted from this Docket Entry Order – signed by Rice's counsel – did not extend the expert deadlines and only mentioned the other pretrial deadlines, stating that "[n]o other deadlines are being extended or reset." *See Stipulation (Dkt. No. 146).* It would be fundamentally unfair to any party to be presented with an expert report for the first time so close to the trial date. The Court will deny this motion.

## Rice's Second Motion for Reconsideration

Rice asks the Court to reconsider its decision excluding any testimony from Dr. James Davidson, who would testify about Rice's PTSD. Rice repeats the arguments he made in this earlier briefing, and the Court finds no reason to reconsider its decision. This motion shall be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

**Memorandum Decision & Order – page 16**

NOW THEREFORE IT IS HEREBY ORDERED, that plaintiff's first motion to exclude (docket no. 152) is DENIED.

IT IS FURTHER ORDERED, that plaintiff's motion in limine (docket no. 153) is GRANTED, and Rice shall be allowed to ask leading questions of witness Officer Murakami.

IT IS FURTHER ORDERED, that plaintiff's motion to establish complicit liability (docket no. 154) is DENIED.

IT IS FURTHER ORDERED, that defendants' second motion in limine (docket no. 155) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to exclude any evidence or argument concerning (1) the unlawfulness of the traffic stop, Rice's arrest, and take-down; (2) any argument on the legality of an officer demanding surrender of a license; (3) bailment and conversion; (4) lost wages; (5) medical expenses; (6) insurance, video entitled "Beat Down on I84" and settlement with Tony Ford; (7) loss of consortium and loss of intimacy; (8) Rice's disability; (9) testimony from lay witnesses regarding medical diagnosis and prognosis. It is denied to the extent it seeks to exclude evidence of the following: (1) resolution of Rice's criminal charges growing out of the traffic stop; (2) passengers' testimony regarding events occurring after Rice was removed from the car and their being pushed back by the officers; (3) Rice's explanation for his response to Officer Murikami's demand that he surrender his license; and (4) punitive damages.

IT IS FURTHER ORDERED, that the motion for hearing (docket no. 157) is MOOT.

**Memorandum Decision & Order – page 17**

IT IS FURTHER ORDERED, that Rice's motion for extension of time to file a response brief to the second motion in limine (docket no. 177) is DENIED, although as explained above, the Court will consider all the arguments raised by Rice in the interest of a full resolution of the issues.

IT IS FURTHER ORDERED, that plaintiff's motion to reconsider (docket no. 193) and second motion to reconsider (docket no. 194) are DENIED.

DATED: April 5, 2018

B. Lynn Winmill
Chief U.S. District Court Judge